# United States Court of Appeals
## For the First Circuit

No. 05-1796

MAGDALENA POMALES,

Plaintiff, Appellant,

v.

CELULARES TELEFÓNICA, INC.; VERIZON WIRELESS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Lipez, Circuit Judge,

Hug,[*] Senior Circuit Judge,

and Howard, Circuit Judge.

Marlene Aponte Cabrera on brief for appellant.
Carl Schuster, Mariela Rexach and Schuster Usera & Aguiló
LLP on brief for appellees.

May 9, 2006

---

[*]Of the United States Court of Appeals for the Ninth
Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>. Magdalena Pomales worked as a sales consultant for Celulares Telefónica, Inc. (CTI), a Puerto Rico retailer of cellular telephone equipment and services. After Pomales was fired by CTI, she brought this action claiming sexual harassment and retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and Puerto Rico law. She also claimed that CTI violated the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 et seq., by not notifying her of the opportunity to purchase continuing health coverage under the company policy following her termination. The district court granted CTI summary judgment. We affirm.

Pomales failed to oppose CTI's statement of undisputed facts in support of its motion for summary judgment in accord with the Puerto Rico Local Rules. <u>See</u> D.P.L.R. 56. The district court, therefore, accepted the facts presented by CTI as admitted. <u>See id.</u> We will do the same. <u>See</u> <u>Cosme-Rosado</u> v. <u>Serrano-Rodríguez</u>, 360 F.3d 42, 45-46 (1st Cir. 2004).

Pomales' relationship with CTI began when she was hired as a temporary employee in November 1995. In August 1999, CTI converted Pomales to permanent status and assigned her to work as a sales consultant in its store in Bayamón, Puerto Rico. Pomales was initially supervised by Norma Vargas. In 2000, Peter Rodríguez joined Vargas as another supervisor. Peter Rodríguez and Vargas were themselves supervised by Rodney Rodríguez.

-2-

In April 2000, Pomales complained to Rodney Rodríguez that Peter Rodríguez had directed an inappropriate comment and gesture toward her. According to Pomales, she invited Peter Rodríguez to come on a sales visit with her, and he responded by grabbing his crotch and stating that "it would be great to come with you."

As a sales consultant, Pomales was responsible for selling products and services to CTI customers. CTI sales consultants made in-store and "proactive" out-of-store sales. Sales consultants were responsible for meeting a minimum sales quota and were paid based on an hourly rate plus commissions.

CTI required sales consultants to verify each customer's credit before consummating a sale. Customers with poor credit were required to provide CTI with a deposit before the sales consultant could complete the sale. The process for determining the customer's credit rating (and resulting deposit) varied depending on whether the sale was an in-store or proactive.

For in-store sales, the consultant accessed, through CTI's computer system, a third-party credit service and reported certain information about the customer. The credit service then provided a credit score which the computer automatically translated into a required deposit amount (if any). For proactive sales, the consultant called CTI's credit department and provided customer information to the credit-department employee. That employee then

determined the required deposit amount and entered the deposit amount manually into the computer. Only credit-department employees could set the required deposit amount for proactive sales, and no sale could be completed until the customer had paid the required deposit.

During Pomales' employment, CTI's computer system malfunctioned in such a way that consultants could bypass the credit-verification process and manually enter a deposit amount. CTI eventually discovered this malfunction in its system, after learning that several consultants had entered inaccurate deposit information to register unauthorized sales.

In August 2000, Vargas received confidential information that Pomales had failed to secure proper deposits from clients by manipulating the credit-verification system. Rodney Rodríguez authorized Vargas to investigate this accusation.

Vargas' investigation revealed that the credit department was unfamiliar with Pomales and had no documentation that she had ever contacted it to register a proactive sale. At Vargas' request, the credit department reviewed more than 10 of Pomales' sales. On each occasion, Pomales had bypassed the credit-verification process and manually entered into the system a notation stating that no deposit was required.

On August 30, 2000, Vargas requested that Pomales produce evidence that she had collected a deposit from one of her proactive

customers.  Pomales failed to comply with this request by September 5th, when she began a three-month medical leave of absence.

While Pomales was on leave, Vargas discussed the results of her investigation with two members of the CTI human resources department.  A conclusion was reached that Pomales had breached several company policies, including a policy against the falsification or malicious alteration of reports and records of interest to the company.  Vargas thereafter decided to terminate Pomales' employment.  Vargas arrived at this decision without knowledge that Pomales had previously complained to CTI management about Peter Rodríguez's inappropriate conduct.

Vargas informed Pomales on the day that she returned from her leave of absence that her employment was terminated.  Pomales was one of several employees that CTI discharged for breaching its credit verification and deposit policies.  Upon Pomales' termination, CTI did not provide her with information concerning the option to purchase continuing health coverage under the company's group health insurance policy.

Three weeks after her termination, Pomales filed an administrative charge of sexual harassment based on a hostile work environment and retaliation with the Puerto Rico Anti-Discrimination Unit of the Puerto Rico Labor and Human Resources Department.  She eventually received a right to sue letter and filed the present action.

After a period for discovery, CTI moved for summary judgment. The district court ruled that Pomales' Title VII hostile work environment claim failed because, inter alia, no reasonable fact finder could conclude that the conduct alleged was sufficiently severe or pervasive. The court also rejected her Title VII retaliation claim because there was no evidence establishing a causal connection between Pomales' protected activity and her termination. Finally, the court determined that CTI did not violate COBRA's notice requirements because the company dismissed Pomales for gross misconduct. Pomales timely appealed.

We review the district court's order granting summary judgment de novo. See Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 47 (1st Cir. 2004). We will affirm the order "if there is no genuine issue as to any material fact and . . . [CTI] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

We begin by considering Pomales' hostile work environment claim. This claim is limited to Peter Rodriguez's comment and gesture to Pomales suggesting that he wished to have sexual relations with her.[1]

---

[1]Pomales' brief makes passing reference to certain alleged acts of harassment that occurred in 1997. The district court ruled that these acts were time barred, and Pomales has not challenged this ruling. In addition, Pomales' appellate argument concerning her harassment claim discusses only Peter Rodríguez's comment in April 2000. Therefore, any claim concerning the 1997 conduct is forfeit.

To succeed on her hostile work environment claim, Pomales must demonstrate, inter alia, that the complained-of conduct was so severe or pervasive that it altered the terms or conditions of her employment. See Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46 (1st Cir. 2003). "There is no mathematically precise test to determine whether [a plaintiff] presented sufficient evidence" that she was subjected to a severely or pervasively hostile work environment. Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (internal citations omitted). We examine all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. See O'Rourke v. Providence, 235 F.3d 713, 729 (1st Cir. 2001). Because this inquiry is fact specific, the determination is often reserved for a fact finder, see Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19 (1st Cir. 2002), but summary judgment is an appropriate vehicle for "polic[ing] the baseline for hostile environment claims," Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc).

The record does not provide a sufficient basis from which a reasonable fact finder could conclude that Pomales was subjected to a hostile work environment. The alleged harassing conduct, while certainly crude, comprised only a single incident. See Clark

County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam) (stating that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"); Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir. 1990) ("[A]n isolated sexual advance, without more, does not satisfy the requirement that an employee asserting a cause of action for hostile environment discrimination demonstrate an abusive workplace environment."). There was no proof that Peter Rodríguez touched or physically threatened Pomales. While we do not preclude the possibility of a single-incident hostile work environment claim based on exclusively verbal conduct, successful single-incident claims typically have involved unwanted physical contact. See Barbara Lindemann & Paul Grossman, Employment Discrimination Law at 795 n. 240 (3d ed. 1996) (collecting cases). Finally, Pomales presented no proof that Peter Rodríguez's conduct negatively affected her ability to work as a CTI sales consultant. See Lee-Crespo, 354 F.3d at 46 (affirming summary judgment for an employer in a hostile environment case where there was no evidence that the conduct caused "an impediment to [the plaintiff's] work performance").

The inappropriate conduct alleged here is similar to conduct which this circuit and others have deemed insufficient to establish a hostile work environment claim. See, e.g., Chamberlin, 915 F.2d at 783 (concluding that it was "highly

-8-

doubtful" that five sexual advances by a supervisor "could be considered sufficiently severe or pervasive to support a sexual discrimination claim of the hostile environment variety"); Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 192-93 (1st Cir. 1990) (holding that conduct was not sufficiently severe or pervasive where, over two-week period, a coworker stood behind the plaintiff to create physical contact, surreptitiously looked at the plaintiff's genitals in the restroom, and engaged in unwanted touching); Burnett v. Tyco Corp., 203 F.3d 980, 984-85 (6th Cir. 2000) (holding that evidence of a single battery and two offensive remarks over six months did not establish a hostile environment). Accordingly, we affirm the district court's grant of summary judgment on Pomales' sexual harassment claim.[2]

We turn next to Pomales' retaliation claim. She contends that, shortly after complaining about Peter Rodríguez's conduct to Rodney Rodríguez, she was retaliated against by being discharged for conduct that she was never notified could result in termination. We analyze this claim under the familiar McDonnell

---

[2]Even if Pomales had established a prima facie case of hostile work environment, CTI may have established an affirmative defense. An employer is not liable if it has an anti-harassment policy with a complaint procedure that an employee unreasonably fails to use. See Marrero v. Goya of P.R., Inc., 304 F.3d 7, 20-21 (1st Cir. 2002). CTI has a policy against sexual harassment and a procedure for brining an incident of sexual harassment to the company's attention by reporting it to the company's human resources office. Pomales acknowledges receipt of CTI's Ethics Manual which discusses this procedure. However, she did not follow this procedure regarding the April 2000 incident.

<u>Douglas</u> framework. <u>See</u> <u>Ramirez Rodríquez</u> v. <u>Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 425 F.3d 67, 84 (1st Cir. 2005) (describing the framework for analyzing retaliation claims drawn from <u>McDonnell Douglas Corp.</u> v. <u>Green</u>, 411 U.S. 792, 802-05 (1973)). To establish a prima facie case of retaliation, Pomales must show that she was engaged in protected conduct, that she was discharged, and that there was a causal connection between the discharge and the protected conduct. <u>See</u> <u>Wright</u> v. <u>CompUSA, Inc.</u>, 352 F.3d 472, 478 (1st Cir. 2003).

There is sufficient proof that Pomales engaged in protected activity by complaining to management about Peter Rodríguez's conduct. Moreover, Pomales was subsequently discharged. The issue is whether a reasonable fact finder could find an adequate causal link between these events. Pomales relies primarily on the chronological proximity between her complaint and discharge to establish the requisite connection. Temporal proximity can create an inference of causation in the proper case. <u>See</u> <u>Wyatt</u> v. <u>Boston</u>, 35 F.3d 13, 16 (1st Cir. 1994). But to draw such an inference, there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action. <u>See</u> <u>Soileau</u> v. <u>Guilford of Me., Inc.</u>, 105 F.3d 12, 16-17 (1st Cir. 1997).

There is no evidence that Vargas, the CTI employee who discharged Pomales, had any knowledge that Pomales complained to

Rodney Rodríguez about Peter Rodríguez's conduct.[3] See, e.g., Sanchez v. Denver Pub. Schs., 164 F.3d 527, 533-34 (10th Cir. 1998) (holding that the plaintiff failed to establish a prima facie case of retaliation because there was no evidence that the decisionmaker knew of the plaintiff's protected conduct); Smith v. Riceland Foods, Inc., 151 F.3d 813, 818-19 (8th Cir. 1998) (same). There is also no proof that Peter Rodríguez or Rodney Rodríguez participated or otherwise influenced either Vargas' investigation or the ultimate decision to discharge Pomales.

Pomales argues that the fact that she did not receive formal notice before the termination suggests retaliation. We disagree. CTI's policy stated that an employee who falsified company records was subject to immediate termination. In any event, Pomales did receive some notice that there was a question about her sales conduct when Vargas asked her to document one of her proactive sales. Given the absence of evidence establishing a causal connection between the protected conduct and discharge, the district court correctly granted CTI summary judgment on the retaliation claim.[4]

---

[3]We do not decide whether the six-to-eight-month interval between Pomales' complaint and the discharge could be probative of retaliation had the decisionmaker known of the complaint. See Kipp v. Missouri Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (concluding that a two-month interval between complaint and adverse action was too long to establish causal connection).

[4]Pomales has presented no appellate argument challenging the district court's determination that CTI was not required to provide

         **Affirmed**.[5]

---

her with COBRA notice because she was fired for gross misconduct.
Therefore, Pomales has waived any challenge to this ruling. <u>See</u>
<u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (stating
that issues adverted to in a perfunctory manner and unaccompanied
by an effort at developed argumentation are waived).

[5]The district court did not address the merits of Pomales'
Puerto Rico law claims in its summary judgment opinion but
nevertheless dismissed these claims with prejudice. Pomales does
not challenge this ruling on appeal.