# United States Court of Appeals
## For the First Circuit

_____

No. 05-2500

ADA I. CARMONA-RIVERA,

Plaintiff, Appellant,

v.

COMMONWEALTH OF PUERTO RICO; DR. CÉSAR REY-HERNÁNDEZ; DEPARTMENT
OF EDUCATION; DR. ELSIE TRINIDAD; JOHN DOE, 04CV1318;
DOE-TRINIDAD CONJUGAL PARTNERSHIP; DR. EDNA ROSA-COLÓN,

Defendants, Appellees,

RAFAEL FELICIANO; FEDERACIÓN DE MAESTROS DE PUERTO RICO,

Defendants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. José Antonio Fusté, U.S. District Judge]

_____

Before
Selya, Circuit Judge,
Hansen, Senior Circuit Judge[*]
and Lynch, Circuit Judge.

Julie A. Soderlund for appellant.
Julio Cesar Alejandro-Serrano, with whom Roberto Sánchez
Ramos, Secretary of Justice, Salvador Antonetti Stutts, Solicitor
General, Eduardo Vera Ramírez, Eileen Landrón Guardiola, and
Landrón & Vera, LLP, were on brief for appellees.

_____

September 12, 2006

_____

[*]Of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.

**HANSEN**, **Senior Circuit Judge**. Ada I. Carmona-Rivera (Carmona) filed suit for disability discrimination and retaliation against the school that employs her, the Commonwealth of Puerto Rico, its Department of Education (DOE), her union, and several individual defendants. The parties entered into a partial settlement agreement regarding Carmona's claims for injunctive relief. The district court ultimately dismissed the remaining claims and Carmona appeals. After careful review, we affirm.

## I. FACTS

Carmona is a full-time, tenured visual arts teacher at the María Bas Vázquez School in Bayamón, Puerto Rico. She suffers from ulcerative colitis and chronic hemolytic anemia. Due to her medical condition and surgeries, Carmona is permanently incontinent, depends on prosthetic equipment for the disposal of bodily waste, and is permanently disabled.

In 2000, Carmona made a request through the DOE for accommodations for her disability at the Vázquez school. Throughout the 2000-01 school year the school was undergoing extensive construction activity, and the facilities and the teaching and learning conditions for everyone in the school were abnormal. Carmona's requests for accommodations included a first-floor classroom, private bathroom facilities in which she could maintain her prosthetic device, and an assigned parking space near the school's entrance. Carmona contends that the school's

director, Dr. Elsie Trinidad, was aware of Carmona's disability but did nothing to assist her, and continued to treat her like everyone else. Carmona filed workplace complaints against the DOE and Dr. Trinidad for failure to accommodate, as she was required to do under the terms of the collective bargaining agreement between her union, Federación Maestros de Puerto Rico (FMPR), and the DOE. Several of her claims were resolved, but even after a resolution by the Puerto Rico Office of the Advocate for Persons with Disabilities (known by its Spanish acronym, OPPI) that was signed by all parties in May 2002, Carmona had yet to be assigned a bathroom facility that met her asserted medical needs when she filed this suit two years later. The OPPI resolution, which adopted a settlement agreement between the DOE and Carmona, required that Carmona be permanently provided a first-floor classroom, a nearby bathroom, and be assigned a predetermined class schedule. Carmona had been assigned a first-floor classroom in January 2002.

By the start of the 2003-2004 academic year, Carmona still lacked a private bathroom facility and an assigned parking space, and Carmona claimed that the school and Dr. Trinidad had never fully complied with the class scheduling requirements of the OPPI resolution. Carmona then made six demands of Dr. Trinidad: 1) that she be assigned an appropriate parking space, 2) that the bathroom Carmona was assigned to use be kept clean and sanitary in order for

Carmona to be able to maintain her prosthesis, 3) that no deduction in salary be made for time Carmona spent on DOE activities, 4) that the class scheduling requirements set forth in the OPPI settlement be complied with, 5) that custodians be required to assist Carmona with the moving of classroom furniture and equipment, and 6) that Carmona be allowed to review her complete personnel file. Because neither Dr. Trinidad nor the DOE had allegedly fully complied with the mandates set forth in the OPPI resolution or addressed Carmona's other new demands, Carmona filed suit on April 14, 2004, against the DOE; the Secretary of the DOE, Dr. César Rey-Hernández; the DOE's regional director, Dr. Edna Rosa-Colón; Dr. Trinidad; the Commonwealth of Puerto Rico; Rafael Feliciano; and the FMPR alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12165; § 504 of the Rehabilitation Act, 29 U.S.C. §§ 701-796; Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17; § 1983 of the Civil Rights Act; and Puerto Rico law.

The district court approved a partial settlement agreement between the parties on July 22, 2004, in which the school agreed to build Carmona a private bathroom to be ready near the start of the 2004-2005 school year and agreed to reserve Carmona a parking space near the school entrance. The court-approved settlement agreement specifically stated that it resolved all of Carmona's claims for injunctive relief. The school year began August 2, 2004, but

because of delays in the delivery of required fixtures and materials, and complications with obtaining approval of the bathroom design, Carmona's bathroom was not ready for use until August 17, 2004.

On March 31, 2005, the district court dismissed the claim against FMPR for lack of jurisdiction, a ruling which Carmona does not appeal. The district court also dismissed the Title VII and ADA claims against Secretary Rey, Dr. Trinidad, and Dr. Rosa in their personal capacities, and the § 1983 and Commonwealth law claims against the DOE, the Commonwealth, and Secretary Rey, Dr. Trinidad, and Dr. Rosa in their official capacities. On August 12, 2005, the district court granted the defendants' motion for summary judgment on the remaining claims, finding that Carmona's Title I ADA claims for monetary damages against the Commonwealth were barred by the Eleventh Amendment, that the settlement agreement had fully satisfied Carmona's claims for injunctive relief, that Carmona had failed to establish a prima facie case of retaliation, and that she had failed to provide specific evidence to support her hostile work environment claim. Carmona appeals from only the district court's August 12 order.

## II. Analysis

### A. Title II

Carmona argues that she is entitled to monetary damages for employment discrimination under Title II of the ADA because

Eleventh Amendment immunity has been abrogated for such claims.[1] The law in this circuit remains unclear as to whether Title II of the ADA even applies to claims of employment discrimination. See Currie v. Group Ins. Comm'n, 290 F.3d 1, 6 (1st Cir. 2002) (recognizing divergent rulings among the circuits and district courts on this issue).

We need not resolve that issue in this appeal because even if an employment discrimination claim is cognizable under Title II and even if the Commonwealth's Eleventh Amendment immunity has been effectively abrogated as to such a claim, the type of damages Carmona seeks would not be available. We have previously held that under Title II, non-economic damages are only available when there is evidence "of economic harm or animus toward the disabled." Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 126-27 (1st Cir. 2003). At oral argument, Carmona conceded that she is not claiming any economic damages, and thus she would need to demonstrate intentional discriminatory animus to prevail. A review of the record before us reveals no such evidence.

Carmona points to the length of the delay in meeting her requests, even after they were approved and agreed upon, and the school's failure explicitly to follow her doctor's recommended

---

[1] The district court concluded that Carmona's Title I claims for monetary relief were barred by Eleventh Amendment immunity, and Carmona does not challenge this ruling on appeal. See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001).

accommodations as evidence of intentional discrimination, but these actions in and of themselves do not show any intent to discriminate. Merely labeling the delay as intentional discrimination, without some modicum of evidence demonstrating an actual discriminatory animus, is itself not enough. Schultz v. Young Men's Christian Ass'n of the U.S., 139 F.3d 286, 291 (1st Cir. 1998). The record is devoid of evidence or reasonable inferences that these delays and failures to provide accommodations that were acceptable to her were anything more than the result of a slow-moving bureaucracy or that they were intentionally undertaken by the defendants to purposefully discriminate against Carmona because of her disability. See id. (holding that plaintiff was not entitled to damages for emotional distress when there was no allegation of economic loss and "not the slightest hint that [the defendant] was prompted by malice or hostility toward [the plaintiff] or toward the disabled"). Without some evidence of intentional discrimination, Carmona cannot recover under Title II for non-economic damages even if we were to determine that Title II encompassed claims of employment discrimination and that Eleventh Amendment immunity was effectively abrogated. While monetary damages are not available to Carmona, injunctive relief would be; however, she conceded at oral argument that her injunctive relief claims had been satisfied. Accordingly we affirm the judgment of the district court granting summary judgment as to Carmona's ADA

claims.

## B.  Partial Settlement Agreement

Carmona conceded that she had been granted the injunctive relief she requested under Title I of the ADA by the settlement agreement.  However, she argues that she is entitled to damages for an alleged breach of the settlement agreement due to an asserted delay in the completion of her bathroom facility from August 2 to August 17.  Carmona contends that the settlement agreement called for the bathroom to be ready for her use by August 2, 2004, the start of the school year, yet construction was not complete until August 17, 2004.  The language used in the court-approved settlement agreement did not specify a date of completion for the bathroom, the agreement stated only that the "bathroom will be built some time at the beginning of the 2004-2005 school year that starts August 2004."

Without determining whether or not the settlement agreement had in fact been breached (a correct procedure in the summary judgment context), the district court denied Carmona's claim for damages based on the alleged breach because the monetary damages she sought were not available under Title I.  Carmona does not address the district court's reasoning in her appeal, contending instead only that any delay in completion of the bathroom was unjustified and in breach of the settlement agreement.

The district court was correct that only injunctive relief is

available under Title I.  Garrett, 531 U.S. at 363 (holding that Title I of the ADA does not abrogate a state's Eleventh Amendment immunity and monetary damages are not available under Title I). Thus, there was no error in the district court's judgment that monetary damages were unavailable to Carmona under Title I for breach of the settlement agreement.

## C. **Hostile Work Environment**

Carmona's claim of a hostile work environment under Title VII, the Rehabilitation Act, and the ADA was terminated by the district court for failure to allege specific instances or facts to support her claim.  "We review the district court's order granting summary judgment de novo, . . . [and] [w]e will affirm the order 'if there is no genuine issue as to any material fact . . . and [the defendants are] entitled to judgment as a matter of law.'" Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)).

In order for Carmona to succeed on her hostile work environment claim, she must demonstrate "that the complained-of conduct was so severe or pervasive that it altered the terms of her employment." Id.  "There is no mathematically precise test" we can use to determine when this burden has been met, instead, we evaluate the allegations and all the circumstances, considering "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interfered with an employee's work performance." Id. (internal quotation marks omitted).

Carmona's main allegation is that the school and its administration were rude and indifferent in their treatment of her and her disability. However, we have previously held that "rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). Carmona has provided no evidence of ridicule, insult, or harassment such that a court could find behavior on the part of the defendants that was "'objectively and subjectively offensive, . . . [behavior] that a reasonable person would find hostile or abusive.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)); see also De La Vega v. San Juan Star, Inc., 377 F.3d 111, 118 (1st Cir. 2004) (holding that general claims of "humiliating and discriminatory treatment" did not provide evidence of harassment because they did not provide specific evidence related to the kind of harassment or frequency or the reasoning behind the alleged discriminatory treatment). Likewise, her assertion that the bathroom facilities available to her prior to August 2004 were unsanitary is not so severe as to alter the terms of her employment and create a hostile environment. Based on the record before us, the district court did not err in its judgment concerning Carmona's hostile work environment claim.

## D.  Retaliation

Carmona's final claim on appeal is that the district court erred in granting summary judgment to the defendants on her retaliation claim.  See Pomales, 447 F.3d at 83 (standard of review).  We have held that to establish a claim of retaliation, a plaintiff "must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked."  Noviello, 398 F.3d at 88 (stating the requirements for retaliation actions under Title VII); see also Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (stating the same requirements under ADA); Weber v. Cranston Sch. Comm., 212 F.3d 41, 48 (1st Cir. 2000) (noting that the Rehabilitation Act prohibits retaliation).  The district court held that there was no evidence that the failure to provide Carmona the requested private bathroom facilities constituted an adverse employment action or was part of an effort to interfere with her ADA-related protected activity.

After the oral argument in this case, the Supreme Court decided Burlington Northern and Santa Fe Railway Company v. White, No. 05-259, 2006 WL 1698953 (U.S. June 22, 2006), holding that the anti-retaliation provision of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment."  Id. at *7.  Rather, "a plaintiff must show that a reasonable employee would have found the challenged action

-11-

materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at *10 (internal marks omitted). This recent refinement of the standard does not alter the outcome of the case before us. The alleged retaliatory action must be material, producing a significant, not trivial, harm. Id. Trivial actions such as "petty slights, minor annoyances, and simple lack of good manners will not [normally] create such deterrence." Id. "Context matters," and "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." Id. at *11.

We turn to the retaliatory action alleged by Carmona and test it against the revised standard. Carmona contends that the delay by the defendants in satisfying her accommodation requests constitutes an adverse harm. While the delay did not work a material change in her employment conditions (because she did not have access to a private bathroom or parking space prior to making her requests), under the revised Burlington standard, the delay may qualify as an adverse action. "The anti-retaliation provision protects an individual . . . from retaliation that causes an injury or harm." Id. at *10. While a delay in providing the accommodations needed to meet a disability may cause a significant injury or harm to a disabled person, the record in this case discloses no such harm. Inconvenience, yes, but no actual harm.

-12-

Additionally, as noted *ante,* Carmona has failed to provide any evidence of a retaliatory intent associated with the delay in implementing her requests, or any evidence which shows that the delay was anything beyond that inherent in the workings of an educational bureaucracy. There is no evidence in this record from which a reasonable jury could conclude that the delays resulted from either intentional discrimination or retaliatory behavior. See Kosereis v. Rhode Island, 331 F.3d 207, 217 (1st Cir. 2003) (finding no causal connection in retaliation claim and noting that it is insufficient to merely state that claimant engaged in a protected activity and then was disciplined); Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997) ("[T]he adverse action must have been taken for the *purpose* of retaliating. And to defeat summary judgment, a plaintiff must point to *some* evidence of retaliation by a pertinent decisionmaker."). Carmona's claims of retaliatory delay also ignore the fact that despite its being under construction for part of the time in dispute and operating under abnormal conditions, the school made some attempt to accommodate Carmona's needs, though the results were not to a level she deemed satisfactory. The fact that Carmona was dissatisfied with the extent of many of the early accommodations does not prove a retaliatory intent on the part of the defendants. The fact remains that the school took steps to meet her requests and did not stonewall her. In addition, there is little indication that the

actions of the defendants would have the chilling effect of deterring others from filing their own requests for a needed accommodation; Carmona's requests were ultimately approved and the needed changes were made.  The system worked, although without the dispatch that Carmona desired.

Because Carmona has failed to establish a prima facie case of retaliation, we affirm the district court's entry of judgment on Carmona's retaliation claim.

### III. Conclusion

Accordingly, we affirm the judgment of the district court.

**<u>Affirmed</u>**.