Jose Adnel **RODRIGUEZ–ROBLES,**
et al., Plaintiff

v.

**PFIZER PHARMACEUTICALS,**
**LLC., et al., Defendants.**

Civil No. 06–1047(SEC).

United States District Court,
D. Puerto Rico.

June 17, 2008.

Francisco M. Troncoso–Cortes, Richard Schell–Asad, Troncoso & Schell, San Juan, PR, for Plaintiff.

Rafael E. Aguilo–Velez, Jose J. Sanchez–Velez, Schuster & Aguilo LLP, Orlando H. Martinez–Echeverria, Orlando H.

Martinez Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Before the Court is Defendants' Motion for Summary Judgment (Docket # 44) and Plaintiffs' opposition thereto (Docket # 49), to which Defendants replied (*see,* Docket # 59). After reviewing the parties' filings, the evidence in the record, and the applicable law, Defendants' Motion for Summary Judgment (Docket # 44) is hereby **GRANTED**.

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Ramírez Rodríguez v. Boehringer Ingelheim,* 425 F.3d 67, 77 (1st Cir.2005). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. *Garside v.* *Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *Depoutot v. Raffaelly,* 424 F.3d 112, 116 (1st Cir.2005) (*quoting, Garside,* 895 F.2d at 48 (1st Cir. 1990)). By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Rojas–Ithier v. Sociedad Española de Auxilio Mutuo,* 394 F.3d 40, 42–43 (1st Cir.2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Id.* (citations omitted).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. *See, Hadfield v. McDonough,* 407 F.3d 11, 15 (1st Cir.2005) (*citing, Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the 'party opposing summary judgement must present definite, competent evidence to rebut the motion.' *Méndez–Laboy v. Abbott Lab.,* 424 F.3d 35, 37 (1st Cir.2005) (*quoting, Maldonado–Denis v. Castillo Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994)). "The nonmovant must

'produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.*; *see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz,* 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve").

## Procedural and Factual Background:

Plaintiffs in this case are José A. Rodríguez–Robles (hereinafter Plaintiff), his wife, Betzaida Cabrera–Rivera, and their Conjugal Partnership. Plaintiff is a former employee of Pfizer Pharmaceuticals, LLC (hereinafter Pfizer). He alleges that during his employment with Pfizer he was subjected to sexual harassment at work by his colleagues and that he was discriminated against for being a protestant. He also argues that Pfizer failed to take measures to correct the harassment. Plaintiff seeks relief under Title VII of the Civil Rights Act, 42 U.S.C.2000e, *et seq.* (hereinafter Title VII), and several state laws.

Defendants filed a Motion for Summary Judgment (Docket # 44), and, in compliance with Local Rule 56(b), they also filed a Statement of Uncontested Facts (Docket # 45)(hereinafter SUF). Plaintiffs opposed Defendants' SUF by admitting, denying, and/or qualifying Defendants' SUF (*see,* Docket # 55)(herereinafter OSUF). Although both parties' Statements of Uncontested Facts complied, in its majority, with Local Rule 56, there are several parts of each party's Statement that ran afoul of the anti-ferret rule. As such, the following facts proposed by the Defendants in their SUF will be disregarded by the Court: SUF ## 42 & 47. These facts were not supported by the record. Also, we note that, at times, Plaintiffs denied Defendants' facts by proposing an alternate version of a given fact in a long narrative within its OSUF, instead of submitting it in a separate statement, as required by Local Rule 56(c). As such, the facts at OSUF ## 20 & 23 will also be disregarded by the Court. Furthermore, some of Plaintiffs' denials were unwarranted in view of the record, and, as such, some of Defendants' facts are going to be deemed as admitted: SUF ## 10, 22, 35 & 43. Finally, some of Defendants' proposed facts have been properly contested and/or qualified by the Plaintiffs: SUF ## 11, 19, 21 & 33.

Consistent with the above, the Court will now narrate the facts as supported by the record.

## Uncontested Facts

Plaintiff, at the time of the events, was a process operator at Pfizer's production facilities in Vega Baja, Puerto Rico. SUF # 1. Co–Defendants Héctor Torres (hereinafter Torres) and Giovanni Morales (hereinafter Morales) are Pfizer employees and, at the time relevant to this complaint, were Plaintiff's co-workers. SUF # 3. Plaintiff worked at Pfizer on the third shift, along with Co–Defendants Torres and Morales, and other co-workers: Damir Santiesteban (hereinafter Damir), and Jorge Serrano (hereinafter Serrano). SUF # 9. Plaintiff's direct supervisor was Carlos Dávila, who was, in turn, supervised by Luis Rojas. SUF # 10.

On November 2, 2004, Rodríguez was working on the third shift when Torres and Morales drifted towards the area where he was working and played a crude sexual prank on him. SUF # 11. Co–Defendants Torres and Morales ap-

proached Plaintiff while he was working some batch records in a hallway at the plant. OSUF # 3. Defendant Torres then positioned himself between some barrels of material and the wall, removed his penis[1] from under the work uniform and showed it to Plaintiff while stating "Look what I have here", at which point Morales remarked that it fit in Plaintiff's mouth. OSUF # 3. Thereafter, Plaintiff went to the report room, where Morales was present, along with Damir. At that time, Morales recounted the whole incident to Damir. *Id.* Plaintiff then asked Morales to stop the "joke" or he would report the incident to his supervisor. *Id.* Morales replied "If you do something we are going to clean you." *Id.*[2]

The following day, Plaintiff went back to work where he met Torres in the locker room. SUF # 13. Torres then stated to Plaintiff that the joke was not meant for him, and immediately thereafter said: "I don't joke with you like that." SUF # 13. Plaintiff alleges, however, that this was said in a threatening manner. OSUF # 4. After these incidents, Plaintiff went to his supervisor, Dávila, and told him what had happened. SUF # 12. Dávila then prepared a statement, based on Plaintiff's account of the events, which Plaintiff approved. SUF # 12. After Plaintiff reported the incidents to Dávila, he remained for a while in the third shift, although Dávila made certain to avoid Plaintiff working with either Torres or Morales. Later, Plaintiff was moved to another shift while the allegations of harassment were investigated and resolved. SUF # 14.

During the investigation, Plaintiff met on various occasions with Dávila and Edgardo Feliciano (hereinafter Feliciano), the Human Resources Manager. SUF # 15. Feliciano assured Plaintiff that everything would be resolved because Pfizer did not tolerate sexual harassment. SUF # 16. Feliciano, assisted by María Yolanda Alicea (hereinafter Alicea), conducted interviews of all the persons identified by Plaintiff as witnesses: Torres, Morales, Damir, Serrano and Dávila. SUF # 17. None of these witnesses supported Plaintiff's version of the facts. *Id.*

On December 1, 2005, after Pfizer concluded the investigation, it reprimanded Torres and Morales for the incident. SUF # 18. Plaintiff then returned to his original shift, and according to his own statements, was not subject to further incidents of sexual harassment. SUF # 19. Also, Plaintiff admitted that prior to the November 2nd incident, he had no problems with neither Torres nor Morales. SUF # 20. Plaintiff also told his treating physician that the November 2nd incident was the only incident of sexual harassment that he suffered in Pfizer. SUF # 25. Furthermore, in all the years he worked for Pfizer, he never witnessed any other incidents of sexual harassment or jokes of sexual nature. SUF # 23. He never made any jokes neither. *Id.*

Plaintiff did complain about Morales occasionally making threatening signs to Plaintiff (*i.e.* crossing his finger through his neck). OSUF # 21. However, he never filed any police report against Morales. SUF # 24.

---

1. There is also an alternate version: that what Torres exposed through his uniform was his finger, wrapped in an elastic glove. However, because we cannot choose between conflicting versions of the facts in the summary judgment stage, we will assume the scenario most favorable to Plaintiff's case.

2. The expression, is a literal translation of the statement "Te vamos a limpiar", which in Spanish might be interpreted as "we will make you suffer".

After these incidents, Plaintiff had to take sick leave; on January, 2007, Plaintiff went to Feliciano and told him that his health was deteriorating and that he felt nervous and depressed. SUF # 26. Feliciano then recommended that he go to Pfizer's infirmary to request sick leave. *Id.* On January 18, 2007, Plaintiff followed Feliciano's recommendation, went to the infirmary, and Dr. Roberto López referred him to the State Insurance Fund (SIF) with an alleged work-related emotional condition. SUF # 27. Plaintiff reported to the SIF on January 19, 2005. SUF # 29. The SIF ordered that Plaintiff rest while receiving treatment. SUF # 29. At the SIF, Plaintiff was treated by Dr. Julio Mojica–Sandoz (hereinafter Dr. Mojica). Plaintiff told Dr. Mojica that he had been under the care of a private psychiatrist since September 2004. SUF # 30. Dr. Rentas, Plaintiff's private psychiatrist, admitted to having treated Plaintiff for marital problems and sexual dysfunction since September 8, 2004. SUF # 31.

Plaintiff requested that Pfizer continue his salary, which it did for two weeks. *See,* SUF # 33 & OSUF # 33. Upon receiving notification of the duration of the salary continuation, Plaintiff called nurse Luisa Torres, who informed him that the salary was discontinued as per Dr. Roberto López's instructions, and Pfizer's policy. SUF # 34. Plaintiff then threatened to tear Dr. López's head off if he spoke to him. *Id.*

After this incident, Pfizer referred Plaintiff to Dr. Raúl López for an independent medical evaluation to determine whether Plaintiff could return to work. SUF # 35. Dr. Raúl López, after evaluating him, indicated that Plaintiff was not fit to return to work. *Id.* Plaintiff never appealed this decision. SUF # 36.

On January 21, 2005, Plaintiff filed a charge of discrimination before the Anti-discrimination Unit (ADU) of the Puerto Rico Department of Labor and Human Resources and the Equal Employment Opportunity Commission (EEOC). SUF # 37. The ADU notified Pfizer with a copy of the charge on February 1, 2005. SUF # 38. Pfizer received a copy of the charge on February 8, 2005. SUF # 38. Plaintiff was definitely released from the SIF on July 22, 2005. SUF # 41. Plaintiff reported to Pfizer on September 2, 2007 and met with Dr. Roberto López to determine if he could return to work. SUF # 43. Upon Dr. Roberto López's inquiry, Plaintiff stated that he could not specify how he would react if he ran into Torres or Morales, because he tended to react violently. SUF # 43. After listening to this statement, Dr. Roberto López sent Plaintiff home finding that he could not return to work due to his emotional condition. SUF # 44. Also, Plaintiff had informed him that he was requesting long-term disability benefits. SUF # 44. Plaintiff never applied for unemployment benefits because Plaintiff was never terminated by Pfizer. SUF # 46.

Finally, at all times during Plaintiff's employment, Pfizer had an Equal Opportunity Policy which forbids sexual harassment and any other type of harassment, which Plaintiff was aware of. SUF # 5–7. Said policy was posted in bulletin boards throughout the company, and made available through a hot line and the intranet. *Id.*

**Applicable Law and Analysis**

I. *Sexual Harassment*

Defendant argues that Plaintiff's Title VII claim for sexual harassment is without merit because he has failed to show either that the conduct he alleges to constitute sexual harassment is so pervasive as to alter the conditions of his employment, and that, in the alternative, the evidence shows that there is no room for employer liability.

■ Title VII of the Civil Rights Act, "makes it an unlawful employment practice to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." *See,* 42 U.S.C. § 2000e–2(a)(1); *see also, Harris v. Forklift,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Supreme Court has broadly interpreted the phrase "terms, conditions or privileges of employment", stating that it encompasses Congress' intent to "strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris,* 510 U.S. at 20, 114 S.Ct. 367. In order to succeed in a hostile work environment claim, Plaintiff must show that: (1) he is a member of a protected class (in this case, his gender); (2) that he was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive; and (6) some basis of employer liability. *Rivera–Martínez v. Commonwealth of Puerto Rico,* 2007 WL 16069 (1st Cir. 2007), *citing, O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir.2001); *see also, Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 394 (1st Cir.2002).

■ "The focus of hostile work environment cases is generally on elements (4) and (5)", that is, the work environment must be severely abusive, subjectively and objectively. *Rivera–Martínez,* 2007 WL 16069 at p. 2. Title VII is violated whenever "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris,* 510 U.S. at 20, 114

S.Ct. 367. (Citations omitted). In other words, "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* Despite Title VII's protection against discrimination based on sex, the Supreme Court has clearly stated that "the prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)(hereinafter *Oncale* ). That is, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Id.*

■ Although there is no mathematically precise test, in order to determine whether an environment is hostile or abusive, the Court must look at all the circumstances, which may include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating, (4) whether it was just a mere utterance, and (5) whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23, 114 S.Ct. 367; *see also, Marrero v. Goya of Puerto Rico,* 304 F.3d 7, 18–19 (1st Cir.2002)(hereinafter *Goya* ); *Lee–Crespo v. Schering–Plough Del Caribe, Inc.,* 354 F.3d 34, 46 (1st Cir.2003)(hereinafter *Lee–Crespo* ); *Pomales v. Celulares Telefónica, Inc.,* 447 F.3d 79, 83 (1st Cir.2006)(hereinafter *Pomales* ). Although this inquiry is fact-specific, and, as such, reserved for a fact-finder, "summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." *Pomales,* 447 F.3d at 83.

Harassing conduct, prohibited by Title VII, can constitute unwelcome conduct motivated by sexual desire, or differential treatment towards an employee because of her sex. *Rivera–Martínez*, 2007 WL 16069, at p. 3. To prove the second type of harassing conduct, a plaintiff must prove that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* The record is totally devoid of evidence to support the proposition that Plaintiff was treated differently than female employees. Therefore, our focus is on whether the actions and comments to which Plaintiff was exposed can be said to have been, subjectively and objectively, severe and abusive. We conclude that they were not. Let's see.

Plaintiff's sexual harassment claim stands on an isolated incident that occurred on November 2nd, 2005, involving his co-workers. These can be summed up as follows: Co–Defendant Torres showed Plaintiff what appeared to be Torres' penis while Co–Defendant Morales told Plaintiff that it fit in his mouth. A little after, Plaintiff went to the locker room, where Morales recounted the incident in front of Damir, another co-worker. At that point, Plaintiff told Morales to stop the joke or he would report the incident to his supervisor. Morales threatened that if Plaintiff did so Morales and Torres would "clean him" (*i.e.* make him suffer). Notwithstanding Morales' threats, Plaintiff reported the incident to Dávila, his supervisor, who performed a thorough investigation of the incident, and interviewed all of the people Plaintiff said witnessed the prank. Upon concluding the investigation, and having found that no one corroborated Plaintiff's account of the events, Pfizer reprimanded Morales and Torres but took no further action against them. Notwithstanding Pfizer's lenient attitude toward the incident, as characterized by Plaintiff,

he admitted that he never again experienced any sexual harassment. However, Morales would occasionally make threatening signals to Plaintiff (*i.e.* running his finger across his neck) when he saw him in the hallway.

■ We note that Torres' and Morales' conduct was definitely crude, discourteous and vulgar. However, discourteousness or vulgarity alone cannot be the basis of a hostile work environment claim under Title VII. Torres' and Morales' comments are the type of "simple teasing, offhand comments, and isolated incidents [that] do not amount to a hostile work environment[, except when extremely serious]." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see also, Lee–Crespo*, 354 F.3d at 38–39 (a supervisor's prying questions about plaintiff's personal life, comments about her appearance, and questions of whether she ever dated doctors, not enough to constitute sexual harassment). This standard attempts to ensure that Title VII does not become a general civility code. *Id.* When followed correctly, it "will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.*

Plaintiff's sexual harassment claim mirrors that raised in *Pomales v. Celulares Telefónica*, 447 F.3d 79 (1st Cir.2006). There, the plaintiff, a sales consultant, alleged that her supervisor sexually harassed her. Her claim was also based in a sole incident where, after she invited him to a sales meeting, her supervisor replied "by grabbing his crotch and stating that 'it would be great to come with you.'" *Pomales*, 447 F.3d at 81. The First Circuit concluded that "[t]he alleged harassing conduct, while certainly crude, comprised only a single incident." *Id.*, at 83. It then stated that "[a]n isolated sexual advance,

without more, does not satisfy the requirement that an employee asserting a cause of action for hostile environment discrimination demonstrate an abusive workplace environment." *Id.* at 84. (*Citing, Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir.1990)). In so concluding, the First Circuit also found important that "[t]here was no proof that [plaintiff's supervisor] touched or physically threatened Pomales ... [and] while we do not preclude the possibility of a single-incident hostile work environment based on exclusively verbal conduct, successful single-incident claims typically involved unwanted physical contact." *Pomales,* 447 F.3d at 84. The same is true here. Although Plaintiff alleges that Morales threatened him, he never alleged that Morales or Torres ever touched him. Furthermore, after Plaintiff complained to Pfizer's management, he never experienced sexual harassment.

Viewed objectively, Torres' and Morales' actions cannot be said to create an abusive and hostile work environment, but an isolated-crude sexual prank. Torres' and Morales' conduct is the type of teasing encountered in a male dominated work environment during a late shift. We are not concluding that this type of conduct among male employees is in any way acceptable. However, given the isolated nature of the incident, and Plaintiff's own admission that he never again experienced this type of unwelcome sexual prank, we cannot say that it qualifies as the type of severe and pervasive conduct required by Title VII. Although Plaintiff felt harassed and thereafter, his job performance deteriorated, which proves the conduct to be, subjectively pervasive, the conduct complained of fails to pass the objectively offensive standard of Title VII. The fact that Plaintiff believed this type of prank to be totally inappropriate, in and of itself, does not give rise to a Title VII claim.

As previously stated by the Court, it is important to emphasize the Supreme Court's warning that Title VII is not a general civility code, and that it requires "neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the conditions of the victim's employment." *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. Congress did not intend to "deprive the workplace of conduct so characteristic of human nature as ... occasional subtle indiscretion, which employees sometimes use to encourage camaraderie on the job and ease its usual downs." *Rigau v. Pfizer Caribbean Corp.,* 525 F.Supp.2d 272, 284 (D.P.R.2007). "Should employees file a complaint for every sexually charged joke or indiscreet question, regardless of its severity, this Court may eventually become a court of manners, and not of law." *Id.* In view of Title VII's rigid standard, and the isolated nature of the sexual, Plaintiff fails to meet the severity requirement of the *prima facie* case.

Notwithstanding the above, even if we conclude that the evidence suffices to conclude that the conduct complained of was sufficiently severe and pervasive, Plaintiff still fails to make out a *prima facie* case of sexual harassment because there is no basis for employment liability, the sixth element of this claim. A Title VII plaintiff faces different standards of employer liability "depending on whether the harasser is a supervisor or co-employee of the victim." *Crowley,* 303 F.3d at 401. When the harasser is a co-worker, the plaintiff must prove that "the employer knew, or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." *Id.* The incidents perceived by Plaintiff as sexual harassment stemmed from his co-workers (Morales and Torres). It is uncontested that Pfizer was put on notice of Torres' and Morales' conduct. Therefore, if Pfizer

failed to take proper measures in response to Plaintiff's complaint, then the sixth element would be met. However, the record shows that upon Pfizer's knowledge of the incident it transferred Plaintiff to a different shift where he did not have to work with Torres and Morales. Thereafter, it conducted a thorough investigation interviewing all of the employees Plaintiff said witnessed the incident, and the alleged harassers. It then reprimanded both Morales and Torres. After the investigation, Plaintiff never again suffered another incident of sexual harassment. As such, we conclude that Pfizer took proper measures to correct the conduct promptly after Plaintiff notified the incident.

We believe that the steps taken by Pfizer were reasonable under the circumstances, and, through Plaintiff's own admission in his deposition, were effective, insofar as he no longer felt sexually harassed. Although he alleges that Morales continued to make threatening signals to him, this kind of conduct, although Plaintiff might consider it to be hostile, does not constitute **sexual** harassment protected by Title VII. Therefore, Plaintiffs' claims for sexual harassment under Title VII are hereby **DISMISSED with prejudice.**

### ii. Discrimination due to religious beliefs

Defendants also moved to dismiss Plaintiff's Title VII claim for discrimination due to his religious beliefs. They argued that Plaintiff failed to include these allegations in the administrative complaints with the EEOC and the ADU, and, as such, are time-barred. Because Plaintiffs voluntarily dismissed these claims, see, Docket # 54, p. 13–14, we will not discuss Defendants' arguments in this respect. Therefore, Plaintiffs' Title VII claims for discrimination based upon religion are hereby **DISMISSED with prejudice.**

### iii. Retaliation

Defendants also moved to dismiss Plaintiff's claim for retaliation. They argue that Plaintiff was never fired, and that he voluntarily left employment to seek long-term disability benefits. See, Docket # 46, pp. 22–25. Furthermore, they argue that the record shows that he was not reinstated because he was not fit to work according to Plaintiff's physicians and not because of Plaintiff's complaints before the EEOC or the ADU. Id. In response to said argument, Plaintiffs countered that they "have not alleged that Mr. Rodríguez Robles was dismissed in retaliation for the filing of the Administrative Charge before the EEOC. . . ." Docket # 54, p. 15. They further added that "as of today, [Plaintiff] is currently permanently disabled as a result [of] the events in question." Id.

Because Plaintiffs agree that there is no retaliation claim pled in the complaint, the Court will not discuss this argument and, in the interest of clarity, will **DISMISS with prejudice** Plaintiffs' retaliation claim as pled in the complaint at Docket # 1, ¶ 45.

### iv. No Individual Liability under Title VII

Defendants also moved to dismiss Plaintiffs' Title VII claims against the individual defendants, Torres and Morales, because there is no individual liability under Title VII. Although the First Circuit is still to decide this issue, the majority of the circuits have concluded that there is no individual liability under Title VII, only employer liability. See, Gómez v. Guidant, Corp., 364 F.Supp.2d 112, 115–16 (D.P.R.2005); Hernández v. Wangen, 938 F.Supp. 1052, 1063–64 (D.P.R.1996). Furthermore, "Plaintiffs concur with the defendants [in] that there is no individual liability under Title VII." As such, Plaintiffs' Title VII claims against Morales and

Torres will be **DISMISSED with prejudice.**

### v. *State Law Claims*

The remainder of Plaintiff's claims are grounded on Puerto Rico law. Defendants argued that should the federal claims be dismissed, then Plaintiffs' supplemental state law claims should also be dismissed because they lack merit. We will refrain from discussing the merits of the supplemental claims. However, having dismissed the federal claims before the Court, in the interest of comity, we will also **DISMISS without prejudice** the pendent state law claims. *See, Newman v. Burgin,* 930 F.2d 955, 963–964 (1st Cir.1991)(holding that "the power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit … [and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity).

### Conclusion

In light of the above, Plaintiffs' Title VII claims are DISMISSED WITH PREJUDICE, and their state law claims are DISMISSED WITHOUT PREJUDICE. Judgment will be entered accordingly.

**SO ORDERED.**