# United States Court of Appeals
## For the First Circuit

No. 09-1861

ANGEL A. VEGA-COLÓN,

Plaintiff, Appellant,

v.

WYETH PHARMACEUTICALS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lipez, Howard, and Thompson,
Circuit Judges.

Anibal Escanellas-Rivera and Escanellas & Juan, P.S.C. on
brief for appellant.
María Antongiorgi, Juan Felipe Santos, and McConnell Valdés
LLC on brief for appellee.

October 28, 2010

**THOMPSON**, **Circuit Judge**. Plaintiff-appellant Angel A. Vega-Colón ("Vega") brought suit against his employer, defendant-appellee Wyeth Pharmaceuticals ("Wyeth"). Vega contends that Wyeth discriminated and retaliated against him based on his military service in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") and Puerto Rico law. See 38 U.S.C. §§ 4301-4335; 29 LPRA §§ 194-194b. The district court granted summary judgment in favor of Wyeth, and Vega timely appealed. After careful consideration, we reverse in part and affirm in part.

## I. Background

We recite the facts in the light most favorable to Vega, the non-moving party, drawing all reasonable inferences in his favor. See Bukuras v. Mueller Group, LLC, 592 F.3d 255, 261 (1st Cir. 2010). The general facts pertinent to Vega's allegations are set forth below, and more detailed facts are provided when we analyze Vega's individual claims.

Wyeth is a pharmaceutical company located in Puerto Rico. In 2002, Vega was hired by Wyeth as a "packaging equipment supervisor." Vega was also a member of the United States Army Reserve. During his employment at Wyeth, Vega alternated between active and inactive status with the Army. Specifically, from 2002 to 2004 Vega was active and took various leaves from Wyeth for military training. From 2004 to February 2007, Vega went on

-2-

inactive status and did not leave for any military training. In February 2007, Vega returned to active status and was promoted to captain with the condition that he join a military unit and participate in military exercises. Vega's Army unit was mobilized in November 2007 and he has been on military leave since then.

In April 2006, the position of "reliability engineer" became available at Wyeth and Vega applied. Vega, along with several other internal candidates, was not hired; an outside candidate was hired instead.

In February 2007, Vega received a job performance evaluation from Wyeth for his 2006 employment year. Per policy, Wyeth provided all of its employees with an annual written evaluation, which included a rating of between one and five with five being the most desirable. For the years 2003 through 2005, Vega was rated a three or "solid performer." For the year 2006, Vega's rating declined to a two, which signaled "needs improvement." Vega disagreed with his evaluation and requested that Wyeth initiate an investigation, which it did.

In April 2007, Vega filed a discrimination complaint with the United States Department of Labor, Veterans' Employment and Training Service ("VETS"), based on Wyeth's failure to hire him for the reliability engineer position. Finding no merit to Vega's accusations, VETS denied the complaint; however, the complaint was

re-instituted at a later point when Vega presented additional evidence. Vega eventually voluntarily withdrew the VETS complaint.

On May 7, 2007, Vega met with Wyeth's employee relations director and site director, though what was discussed at this meeting is disputed.[1] According to Wyeth, the parties discussed the results of the investigation it conducted into Vega's 2006 performance evaluation, in particular that the investigation revealed no discriminatory acts. Vega denies such a conversation took place. Also according to Wyeth, at this meeting Vega made a threatening comment to the effect that Wyeth's site director made it easy for one to understand why massacres like the one at Virginia Tech take place.[2] Vega has no memory of such a comment.

It is undisputed that shortly after this meeting Wyeth restricted Vega's access to its plant. Vega, who was out on leave at the time, learned of this restriction when he attempted to enter the plant to drop off his military orders. Vega was stopped and informed by a security guard that he could not enter because Wyeth's computer database listed him as terminated. Wyeth contends that Vega was not in fact fired but concedes his access was

---

[1] As will be discussed more fully, this factual dispute is not material.

[2] The reference is to the tragic April 16, 2007 shooting on the Virginia Polytechnic Institute and State University campus in Blacksburg, Virginia where thirty-two members of the faculty and student body were killed by a lone gunman, while multiple others were injured.

restricted because of security concerns over his comment about the Virginia Tech massacre. Notably, Vega never received a termination letter and he continued to receive a salary and benefits.

At some point, Vega returned from leave with his access to the plant restored. Then in July 2007, Vega was placed on a "performance improvement plan" ("PIP"). Per Wyeth policy, all employees who received a performance evaluation rating of two or lower were placed on a PIP. The PIP established objectives for Vega to complete within ninety days, which he timely completed. That November, Vega was informed that although he had completed the PIP's objectives, the PIP would be extended for other reasons until he returned from military service. Vega's Army unit was mobilized that month.[3]

Around the same time, Vega instituted the underlying action alleging past and continuing discriminatory and retaliatory conduct. Particularly, he claims Wyeth took the following improper actions: (1) failing to hire him for the reliability engineer position; (2) awarding him a low performance rating; (3) extending the PIP; (4) discharging and then reinstating him; (5) allowing a hostile work environment; and (6) retaliating against him for filing the VETS complaint. Wyeth moved for summary judgment on all

---

[3] Vega was scheduled to return to work in February 2010. Because the lower court proceedings took place prior to this time, it is uncertain whether Vega has returned from military leave and re-assumed his position at Wyeth.

of these claims, and shortly before trial its motion was granted. Final judgment was entered in Wyeth's favor and Vega timely appealed.

## II. Standard of Review

This court reviews a district court's grant of summary judgement de novo. Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006). If there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, we affirm. Id.; see also Fed. R. Civ. P. 56(c)(2). "In order to overcome a motion for summary judgment, the non-moving party must put forth specific facts to support the conclusion that a triable issue subsists." Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010). On each issue on which the non-moving party has the burden of proof, "that party must present definite, competent evidence to rebut the motion." Id. (internal citation omitted). "Summary judgment for the defendant[] is appropriate when the evidence is so one-sided that no reasonable person could find in favor of the plaintiff." Kosereis v. Rhode Island, 331 F.3d 207, 211 (1st Cir. 2003).

## III. Discussion

### A. USERRA

The purpose of USERRA is to encourage non-career military service, minimize disruption based on this service, and prevent

discrimination against service members. 38 U.S.C. § 4301. To this end, USERRA provides that:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). It further provides that an employer "may not discriminate in employment against or take any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded" under USERRA. 38 U.S.C. § 4311(b). The term "uniformed service" means in pertinent part the Armed Forces when engaged in active duty for training. 38 U.S.C. § 4303(16).

Vega contends that the alleged discriminatory and retaliatory actions taken by Wyeth were the result of his decision to return to active duty with the Army, which he ultimately did in February 2007. Wyeth urges that because Vega did not return to active duty until February 2007, he was not protected under USERRA until this date. Vega counters that the applicable date was February 2006, which is the month he was selected for the position of Army captain with the condition that he return to active status and also the month he informed one of his supervisors that he would be returning to active status. The district court disagreed with both parties' contentions. It found that because USERRA protects

individuals who apply for active duty; the applicable date of coverage was when Vega informed his supervisors at Wyeth that he intended to apply to join an active military unit. Based on this reasoning, the court found November 2006 to be the applicable date.

The initial inquiry for this court is what protected status and/or conduct served as the basis for Wyeth's allegedly improper actions. Vega claims that Wyeth's actions stemmed from his decision to apply for active duty and his resulting military service. Thus Vega's application to perform service and his subsequent membership in a uniformed service are the respective conduct and status at issue. See 38 U.S.C. § 4311(a).

The next question is when did the protected conduct and status occur. It is undisputed that Vega returned to active duty in February 2007 and thus became a member of a "uniformed service" for purposes of USERRA. See 38 U.S.C. § 4303(16). The more difficult question is when did Vega "appl[y] to perform" active duty service for purposes of USERRA. Id. Construing the record carefully, we find that Vega's notification to his Wyeth supervisors that he was returning to active duty constituted such an application. While informing a supervisor of one's intent to return to service is not strictly speaking an application for service; it is only logical that USERRA coverage would be triggered at the point in time in which an employer has information about an employee on which it could base discriminatory treatment. Here

Vega expressed a definite intent to return to active duty in the near future. To deny an employee who has expressed such a definite intention the protection of USERRA until his literal application for service is signed and delivered would be contrary to the stated purposes of USERRA. See 38 U.S.C. § 4301. This conclusion is further supported by the principle that USERRA should be broadly construed in favor of military service members as its purpose is to protect such members. See Hill v. Michelin North America, Inc., 252 F.3d 307, 312-13 (4th Cir. 2001) (citing Coffy v. Republic Steel Corp., 447 U.S. 191, 196 (1980)(construing USERRA's predecessor liberally in favor of military members)); see also Gordon v. Wawa, Inc., 388 F.3d 78, 81 (3rd Cir. 2004).

Thus, the final question is when did Vega inform his supervisors that he was returning to active duty. As noted above, the district court found this date to be November 2006. We disagree. In November 2006, Vega did inform two of his supervisors that he was accepted into a military unit and would start performing drills. However, Vega testified at deposition that earlier, in February 2006, shortly after receiving his invitation from the Army to become a captain, he informed his supervisor Johnny Figueroa ("Figueroa") that he was returning to active status and there was a high possibility he would be mobilized. Wyeth has not disputed this statement. Therefore, viewing the evidence in the light most favorable to Vega, February 2006 is the date on

which he informed his supervisors of a definite intent to return to active duty, thus triggering USERRA.[4]  Because Vega's April 2006 application for the reliability engineer position was the earliest action related to his claims, any alleged improper conduct by Wyeth necessarily took place after USERRA was triggered.

Now we turn to the merits, particularly whether Vega's application for service and his resulting military service formed the basis for any of Wyeth's allegedly improper actions.  In assessing a USERRA claim, the burden is on Vega to make an initial showing that his military status "was at least a motivating or substantial factor in [Wyeth's] action."  Velázquez-García v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 17 (1st Cir. 2007) (internal citation omitted); see also 38 U.S.C. § 4311(c)(1)-(c)(2).  If Vega can make this showing, the burden then shifts to Wyeth to "prove, by a preponderance of the evidence, that the action would have been taken despite the protected status." Velázquez-García, 473 F.3d at 17.  We address each of Vega's claims in turn.

---

[4] Later in his deposition Vega contradicted himself by stating that he informed Figueroa of his promotion in April or May 2006 and the complaint contains a similar allegation.  Before this court, Vega claims that the February date is in fact correct.  Construing the evidence in Vega's favor, we find the February date to be the applicable date.  Notably, because the contradictory statements were made in the complaint and Vega's deposition, this is distinguishable from instances where a party attempts to defeat summary judgment with an affidavit that contradicts previous deposition testimony without explanation.  See, e.g., Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994).

-10-

## B. Reliability Engineer Position

Vega avers that Wyeth's failure to hire him for the reliability engineer position violated USERRA. USERRA prohibits an employer from denying an employee a "promotion" based on the protected factors relating to military service. 38 U.S.C. § 4311(a). Though Wyeth claims that the reliability engineer position did not constitute a direct promotion, it concedes that the position carried higher pay, bonuses, and increased benefits -- typical indicia of a promotion. Construing the statute broadly in Vega's favor, we find the reliability engineer position was a promotion for purposes of USERRA.

Regarding Wyeth's motives for not hiring Vega for the position and instead hiring outside candidate Gloryvee Ramos ("Ramos"), Vega presented little evidence. While Vega had some knowledge about the position's requirements, he did not know who else applied for the position, those persons' qualifications, or why Wyeth recruited Ramos. What Vega did know was that his supervisors, Figueroa and Reinaldo Quiñones ("Quiñones"), were part of a panel that participated in the decision to hire Ramos. Vega further alleges that Figueroa informed him that he did not recommend Ramos because she was weak in the maintenance area.[5]

---

[5] The district court found that Vega's attempt to introduce Figueroa's statement failed; however, it did not state on what grounds it based this finding. We see no reason why the statement would not be admissible. To the extent the district court construed it as hearsay, we disagree. Figueroa was an employee of

Additionally, Vega expressed via affidavit a belief that he was better qualified than Ramos. Wyeth, on the other hand, put forth affidavit evidence from Figueroa and Quiñones that Ramos was selected for the position because she was the strongest candidate.[6] Figueroa also stated, contrary to Vega's assertion, that he personally recommended Ramos and agreed with the decision to hire her.

The contradictory evidence does raise an issue as to whether Figueroa in fact recommended Ramos for the position. Nonetheless, the inner workings of the hiring panel are not relevant, so long as Vega's military status was not a motivating or substantial factor in Wyeth's decision not to hire him. See Velázquez-García, 473 F.3d at 17. Vega has put forth no evidence

_____

Wyeth involved in the hiring process and thus his statement is an admission by a party-opponent and therefore an exception to the hearsay doctrine. See Fed. R. Evid. 801(d)(2) (A statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.").

[6] Vega attempted to rebut Quiñones by submitting an affidavit in which Vega claimed that he previously testified that Quiñones said Vega was not hired for the position because he was not reliable due to his military service. Vega did not cite to any portion of his deposition testimony and this court, along with the district court, could locate no such testimony. Therefore, like the district court, we disregard Vega's allegation. See Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 206 (1st Cir. 1996) ("The summary judgment paradigm requires us to draw and respect only reasonable inferences; we need not infer that which is farfetched or fantastic.").

that it was, essentially relying only on his personal belief that he was more qualified. Vega's subjective belief is insufficient. See Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998) (An employee's "personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext" in an employment discrimination action.). Vega is required to "show evidence of discrimination other than the fact of non-selection and membership in the protected class." Sheehan v. Department of Navy, 240 F.3d 1009, 1015 (Fed. Cir. 2001). He has not done so. As Vega has not satisfied his burden, Wyeth is entitled to summary judgment on this issue.

## C. Low Performance Rating/Performance Improvement Plan

Vega next contends that his level two 2006 performance rating, which resulted in his being placed on a PIP, was given in violation of USERRA. USERRA prohibits an employer from improperly denying "any benefit of employment." 38 U.S.C. §4311(a). A "benefit of employment" is defined to include "any advantage . . . that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2).

Here Wyeth's employee relations director put forth affidavit evidence that employees who received a low performance rating, and were consequently placed on a PIP, were not eligible to apply to other internal positions until the PIP was completed. Further, the PIP itself stated that such employees were subject to

-13-

disciplinary action and termination for failure to complete the PIP. Construing USERRA's definition of "benefit of employment" broadly, we find that the ability to seek additional employment within the company, and the freedom from the threat of discipline or termination based on failure to complete the PIP, do constitute "advantage[s]." Id. Thus, Vega has raised an actionable claim with respect to this issue.

However, Vega must also make the requisite showing under USERRA that his military status was a motivating factor in Wyeth's decision to award the low performance rating. See 38 U.S.C. § 4311(c)(1). In support of his claim, Vega contends that: (1) he was never subject to any disciplinary action before receiving the low rating; (2) his rating was higher the previous year; and (3) he had recently informed his supervisor, Gilberto Inserni ("Inserni"), who issued the rating, about his military leave. Thus, Vega avers his military service was a motivating factor in the issuance of the low rating. We find these arguments unpersuasive. First, Vega has presented no evidence that a disciplinary action must precede a low performance rating. Nor has he demonstrated that employee ratings cannot change from year to year as reflective of a change in that employee's work performance. Finally, though the proximity in time between Vega informing Inserni of his leave and his receipt of the low rating is a factor for consideration, it alone is not sufficient. See Velázquez-García, 473 F.3d at 19 (finding that

-14-

proximity in time between military service and an adverse action is not an "exclusive test").

Assuming arguendo that temporal proximity is sufficient to satisfy Vega's burden, Wyeth put forth evidence that it would have given Vega a low rating and implemented a PIP regardless of his military membership. In particular, the PIP itself documented Vega's various employee performance issues, including his argumentative behavior, failure to address equipment reliability issues, and failure to timely address assignments. Vega did not specifically rebut these findings, but generally disagreed with his review and believed himself an excellent employee. Moreover, responding to Vega's allegations of discriminatory treatment and request for an investigation into his low rating, Wyeth's human resources director and associate director each conducted an investigation, which included multiple meetings with Vega and the gathering of information. Wyeth concluded that the rating should stand and that it was not the result of discriminatory acts.

Other than proximity in time, Vega has not come forth with any evidence that his military status was a motivating factor in Wyeth awarding him the low performance rating and implementing the PIP. See 38 U.S.C. § 4311(c)(1). Furthermore, Wyeth has sufficiently established that it would have taken such action regardless of Vega's military membership. Id. In light of the above, Wyeth is entitled to summary judgment on this claim.

-15-

## D. Performance Improvement Plan Extension

Even if the PIP itself can be deemed valid, Vega claims that Wyeth's extension of the PIP was an improper discriminatory action. For the same reasons the low performance rating and implementation of the PIP could constitute a denial of an employment benefit under USERRA; so too could the PIP's extension. See 38 U.S.C. § 4303(2) (defining a "benefit of employment" as "any advantage . . . that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice"). Vega has therefore raised a cognizable USERRA claim and we turn to the merits of his argument.

In our review of the record, the following was established as to the PIP's extension. The PIP itself stated that although Vega completed the set goals, it was being extended because of: (1) an email Vega sent in which he described a supervisor in a disrespectful manner; (2) a letter Vega improperly solicited his co-workers to sign attesting to his job performance; and (3) Vega's authorized leave. The PIP was to remain open for at least three months after Vega returned from leave so that positive behavior and work habits could be verified. Additionally, Vega testified that one of his supervisors, Andrew Espejo ("Espejo"), informed him that he did not pass the PIP because his performance was affected by his military service.

Based on the above facts, the district court found that Vega satisfied the first prong under USERRA, particularly his burden of demonstrating that his military service was a motivating factor in Wyeth's actions.[7] See 38 U.S.C. § 4311(c)(1). We agree. Both Espejo's comments, and the language contained in the PIP attributing the extension to Vega's leave, satisfied his burden on this issue.

The district court then moved to the second prong -- Wyeth's burden to demonstrate that it would have extended the PIP in the absence of Vega's military status. Id. The court found that Wyeth satisfied this burden and was therefore entitled to summary judgment.[8] In finding for Wyeth, the court relied on Vega's disrespectful email and the inappropriate letter he circulated. Additionally, the court believed that Wyeth was

_____

[7] Before deciding the merits, the district court noted that although it would not do so, it could dismiss this claim because Vega was seeking only monetary damages and the sole remedy would be reinstatement of his pre-PIP status. We disagree. Were Vega able to prove that he lost wages in the form of a salary increase or benefits based on the PIP's extension, he could potentially recover monetary damages. See 38 U.S.C. § 4323(d)(1)(B) ("The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.").

[8] The magistrate judge who issued the report and recommendation in this matter found that Wyeth had not satisfied its burden on this issue, and recommended that summary judgment be denied on the PIP extension claim. The judge who issued the final decision, however, disagreed.

generally entitled to extend a PIP when an employee was on leave during a portion of it. This reasoning is not persuasive.

First, while the email and letter may be sufficient grounds on which Wyeth could base the PIP's extension, the inquiry is not whether Wyeth was entitled to extend the PIP, but whether such "action would have been taken in the absence of [Vega's military] membership." 38 U.S.C. § 4311(c)(1); see, e.g., Velázquez-García, 473 F.3d at 20 (holding that with respect to employee termination, "[t]he issue under USERRA is not whether an employer is 'entitled' to dismiss an employee for a particular reason, but whether it would have done so if the employee were not in the military"). Specifically, Wyeth must "demonstrate, by a preponderance of the evidence, that it would indeed have" extended the PIP regardless of Vega's military service. Velázquez-García, 473 F.3d at 20.

Here the PIP itself stated that Vega successfully completed its objectives prior to Wyeth's extending it. Further, Espejo purportedly remarked that Vega did not pass the PIP due to his military service. Notably, Wyeth has not rebutted this assertion. Given the PIP's language and the testimony concerning Espejo's comment, there "is sufficient doubt on this issue to make it a jury question." Id.; see also Sensing v. Outback Steakhouse of Florida, LLC, 575 F.3d 145, 153 (1st Cir. 2009) (quoting Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 19 (1st Cir. 2004))

-18-

(In instances where "the record contains inconsistencies 'that favor in some lights the defendant[] and in others the plaintiff,' as long as the 'plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in [his] favor, the factfinder must be allowed to determine which version of the facts is most compelling.'")

Further, the district court's finding that Wyeth would have extended the PIP for any employee on leave -- whether it be military leave, sick leave, or otherwise -- is not relevant. The fact that Wyeth may have treated other absences similarly does not overcome the fact that it may have based its treatment of Vega, at least in part, on his military absences. See Erickson v. U.S. Postal Service, 571 F.3d 1364, 1368 (Fed. Cir. 2009) ("An employer cannot escape liability under USERRA by claiming that it was merely discriminating against an employee on the basis of his absence when that absence was for military service.").

We hold that the evidence is sufficiently strong that a reasonable jury could find in Vega's favor; therefore, the district court erred in granting summary judgment on this issue.

### E. Facility Access Denial

Next Vega contends that Wyeth wrongfully discharged and then reinstated him while he was away on military leave. This claim is based on the incident in which Vega attempted to enter Wyeth's plant but was turned away by a security guard. Wyeth

admits that it restricted Vega's access over security concerns but denies that it terminated Vega. We find that Vega has failed to raise a cognizable claim with respect to this issue.

Though there is some factual dispute surrounding this claim, such dispute is immaterial. Specifically, it is irrelevant whether Vega's access to the plant was restricted in response to an alleged comment about the Virginia Tech massacre or not. "To be considered material, a disputed fact must have the potential to affect the outcome of the suit under the governing law." Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002) (internal citation omitted). In this case, why Vega's access was restricted does not affect the outcome of this suit. What is relevant is this -- the evidence conclusively demonstrated that while Vega's access to the plant was restricted on that one occasion, he was not terminated from employment. Most notably, he continued to receive a salary and benefits, and never received a termination letter. For this court to conclude that Vega was terminated solely based on a comment by a security guard, which may have been incorrect or misconstrued, would require us to draw an improbable inference. "Although employment discrimination cases deal with elusive concepts such as motive or intent," summary judgment is compelled "if the non-moving party rests his case merely upon conclusory allegations, improbable inferences, and unsupported speculation." Mariani-Colón v. Dep't of Homeland Sec.,

511 F.3d 216, 221 (1st Cir. 2007) (internal citation omitted). Thus Vega was not denied "retention in employment" pursuant to USERRA. See 38 U.S.C. § 4311(a).

Further, Vega's restricted access to the plant cannot be deemed a denial of a "benefit of employment" because he was on leave at the time and had no need to access the plant. See 38 U.S.C. §§ 4303(2), 4311(a). Nor can it constitute an "adverse employment action" in retaliation for Vega's VETS complaint, because the incident took place prior to Wyeth's learning about the complaint. See 38 U.S.C. § 4311(b). As Vega has failed to set forth an actionable claim based on this one incidence of restricted access, Wyeth is entitled to summary judgment.

## F. Hostile Work Environment

Vega alleges that dating back to October 2006, he was subjected to comments and name calling by various Wyeth supervisors, related to his military service. Specifically, on one occasion Inserni asked Vega whether his military training was similar to the American military movie "Rambo." Additionally, Quiñones expressed disagreement with the wars in Iraq and Afghanistan, a sentiment which Vega admittedly heard often and in fact agreed with. Quiñones also once questioned Vega about his status with the military, an inquiry Vega admitted was reasonable for a supervisor to make. Further, Inserni and Quiñones repeatedly referred to Vega as "soldier", "little soldier", "sergeant", and

-21-

"Rolandito." Another supervisor, Antonio Otano, also referred to Vega as "Rolandito." This moniker, referring to a famous missing boy in Puerto Rico, was taken by Vega to be a negative commentary on his absences for military service. Vega concedes that this suspicion was not based on anything he was told and in fact he often took leave for reasons other than military service. From Vega's vantage he found the above comments discriminatory and derogatory and he sought psychiatric help, in part, he says, based on the work environment at Wyeth.

Neither the Supreme Court nor any court of appeals has decided whether a hostile work environment claim is cognizable under USERRA.[9] For purposes of this decision we assume, without deciding, that it is. In order to establish a hostile work environment, Vega "must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [his] employment.'" Pennsylvania State Police v. Suders, 542 U.S. 129, 133 (2004) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). He must also establish that "the offending behavior . . . 'create[s] an abusive working environment.'" Id. at 146-147 (internal citation omitted). The harassment must be both

_____

[9] The issue has only arisen twice, before the Eleventh and Ninth Circuit Courts of Appeals respectively, but both courts declined to decide the issue. See Dees v. Hyundai Motor Mfg. Alabama, LLC, 368 Fed. Appx. 49, 53 (11th Cir. 2010) (unpublished); Church v. City of Reno, No. 97-17097, 1999 WL 65205, at *1 (9th Cir. Feb 9, 1999) (unpublished).

objectively and subjectively offensive.  See Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Roman v. Potter, 604 F.3d 34, 42 (1st Cir. 2010) (addressing a hostile work environment claim under Title VII).

Here there is no basis for a jury to conclude that Vega was subject to a hostile work environment.  In making this determination, we examine "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)).  Here Vega alleges a very limited number of comments, along with more frequent name calling.  Although the evidence demonstrates that the comments and name calling may have been subjectively offensive to Vega, in this court's opinion, neither amounted to objectively offensive conduct as the behavior was not severe, physically threatening, or humiliating.  Moreover, Vega has failed to set forth sufficient evidence from which a jury could conclude that the complained of conduct interfered with his work performance to an extent that is unreasonable or that altered the conditions of his employment.

We note that because the inquiry into the existence of a hostile work environment is fact specific, "the determination is

-23-

often reserved for a fact finder." Pomales, 447 F.3d at 83. Nonetheless, "summary judgment is an appropriate vehicle for 'polic[ing] the baseline for hostile work environment claims.'" Id. (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc))(alteration in original). In the instant matter, Vega has failed to establish even a baseline claim of an "abusive working environment." Pennsylvania State Police, 542 U.S. at 147 (internal quotation marks and citation omitted). As no reasonable fact finder could find in Vega's favor, Wyeth is entitled to summary judgment.

## G. VETS Complaint

Vega contends that in response to the complaint he filed with VETS, Wyeth discriminated against him and took adverse employment action in violation of USERRA. See 38 U.S.C. § 4311(b). This court has defined an adverse employment action under Title VII as "one that 'affect[s] employment or alter[s] the conditions of the workplace.'" Morales-Vallanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010)(quoting Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 61-62 (2006)) (alteration in original). The Seventh Circuit has applied a similar definition in a USERRA action. See Crews v. City of Mt. Vernon, 567 F.3d 860, 869 (7th Cir. 2009)("An adverse employment action is one that significantly alters the terms and conditions of the employee's job.") (internal citation omitted). In the context of Title VII, the Supreme Court has held

-24-

that the "term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals." Burlington Northern & Santa Fe Ry. Co., 548 U.S. at 59.

Vega filed a VETS complaint in March 2007. However, Wyeth presented evidence, including an affidavit from its human resources director and the entire VETS file, which established that it did not become aware of Vega's VETS complaint until September 2007. Vega has offered no contradictory evidence. Thus any retaliatory actions necessarily had to take place after this date. As such, the only actionable events alleged by Vega based on his theory of retaliation are: (1) extension of the PIP; (2) his not being awarded salary increases in 2008 and 2009; and (3) continued name calling.

As discussed above, Vega put forth evidence on which a jury could determine that the PIP was improperly extended due to his military service; however, he has presented no evidence that it was extended in response to his VETS complaint. He has significantly failed to demonstrate whether the person or persons involved in the decision to extend the PIP were even aware of the complaint.

Similarly, with regards to potential salary increases in 2008 and 2009, Vega has presented no evidence of Wyeth's process or criteria for evaluating and awarding raises, or evidence of the persons responsible for making such salary determinations. In the

-25-

absence of such evidence, this court cannot simply assume that Vega was entitled to a salary increase in 2008 and 2009. Nor can we assume that the persons making these compensation decisions were aware of the VETS complaint. As a result, Vega has not met his burden of demonstrating that his filing of the VETS complaint was a motivating factor in Wyeth's extension of the PIP or decision not to increase his salary, or that it generated any adverse employment action against him.

With respect to the name calling, we question whether such conduct constituted an adverse employment action or discrimination in light of the meaning that courts have applied to these terms. See Morales-Vallanes, 605 F.3d at 35 (An adverse employment action "'affect[s] employment or alter[s] the conditions of the workplace.'"); Burlington Northern & Santa Fe Ry. Co., 548 U.S. at 59 ("'[D]iscriminate against' refers to distinction or differences in treatment that injure protected individuals.") However, assuming that such comments are actionable, Vega has also failed to satisfy his burden on this issue.

First, the name calling took place both before and after Vega filed the VETS complaint, with no escalation alleged after September 2007. This is a fatal flaw in Vega's argument. See, e.g., Frazier v. Fairhaven School Committee, 276 F.3d 52, 67 (1st Cir. 2002). Further, we are persuaded by the Seventh Circuit's holding that with respect to USERRA retaliation actions, "negative

-26-

employer comments will support a retaliation claim only if they are 'severe and pervasive.'" Crews, 567 F.3d at 870 (internal citation omitted). Objectively viewed, the name calling directed at Vega was not, in our opinion, severe. Therefore he has failed to establish that Wyeth retaliated against him in violation of USERRA.[10] Wyeth is thus entitled to summary judgment on this claim.

## IV. Conclusion

For the above reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion. Each party to bear its own costs.

---

[10] Vega claims that Wyeth's alleged retaliation in response to the VETS complaint not only violated USERRA but also the Puerto Rico Whistle-Blower Act ("Law 115"). See 29 LPRA §§ 194-194b. Vega's burden under Law 115 is more stringent then under USERRA, as the former requires an employee to establish not only discrimination, but that the employer's non-discriminatory reason is pretext. See 29 LPRA § 194a(c). As Vega failed to establish a USERRA violation, he cannot establish a Law 115 violation.