DECISION
This matter comes before this Court for decision following a non-jury trial in the above-entitled action.[1] Donald Panarello ("Panarello" or "Plaintiff") alleges that the State of Rhode Island Department of Corrections ("Defendant" or "DOC" or "State") violated the Uniformed Services Employment and Reemployment Act of 1994, 38 U.S.C. § 4301 et seq. (USERRA), as well as Rhode Island General Laws 1956 § 30-11-1 et seq., by denying him a promotion. Plaintiff seeks (1) a declaration that the practices he complains of are unlawful, (2) compensatory damages, (3) punitive damages, (4) liquidated damages, (5) this Court's retained jurisdiction of this action to ensure full compliance, (6) costs, expenses, and reasonable attorneys' fees, and (7) such other relief as this Court deems just and proper. This Court has jurisdiction pursuant to G.L. 1956 § 8-2-14 and renders its decision in accordance with Super. R. Civ. P. 52. *Page 2 
 I Factual Findings and Travel A Procedural Posture
This dispute arises from the DOC's allegedly discriminatory failure to promote Panarello during his period of active duty with the Rhode Island Air National Guard ("RIANG") from June 7, 2000 to September 6, 2006. Panarello argues that the DOC illegally considered his active duty service when it failed to promote him to Lieutenant in 2001 and 2002, as well as when it withdrew an offer for a temporary promotion in the summer of 2002.
In 2003, Plaintiff filed the instant action under USERRA and Rhode Island military antidiscrimination laws, G.L. 1956 § 30-11-1 et seq., alleging that the DOC's failure to promote him while he was on active duty with the National Guard, as well as other disparate treatment, violated both federal and state laws. The Plaintiff further alleges that once he began to complain, his supervisors at the DOC retaliated against him by,inter alia, not permitting him to work at the DOC during his military leave, withholding benefits, and threatening him with the loss of his job during a dispute over his return to work date.
On January 22, 2009, this Court issued a decision on preliminary matters. Panarello v. State, 2009 WL 301888. The decision set forth the burden of proof to be used in this case, held that the Plaintiff's claim was not barred by the doctrine of sovereign immunity, and ruled on Defendant's eight motions in limine.
During a four-day, non-jury trial on July 13, 14, 15, and 16, 2009, Plaintiff presented twenty-one exhibits and the DOC submitted nineteen exhibits to this Court. The Court heard testimony from seventeen witnesses. Subsequent to trial, both parties submitted post-trial memoranda. Based on the testimony and evidence, this Court makes the following findings. *Page 3 
 B Panarello's Careers
In 1985, Plaintiff began his service in the RIANG. He was then hired as a correctional officer at the DOC in 1988. From June 2000 to September 2006, Plaintiff was assigned to a temporary full-time RIANG position in counter-drug operations. This position was based in Cranston, Rhode Island. In 2004, Plaintiff was deployed to Afghanistan and Uzbekistan for a one-year tour as part of Operation Enduring Freedom. To perform these six years of service, Plaintiff took a military leave of absence from the DOC.
In 1999, Panarello took the civil service exam — the test that is a prerequisite to becoming a candidate for Lieutenant or Captain. He scored high enough on that exam to be considered for promotion. In 2001 and 2002, Plaintiff was interviewed by DOC panels for a promotion to Lieutenant. He was not chosen for promotion either time. In the summer of 2002, Plaintiff was offered and accepted a six-month temporary Lieutenant's position (known as a "3-Day-Rule" position). The DOC, however, withdrew the offer when Panarello informed the DOC that his military service would prevent him from reporting for that temporary position immediately.
In 2007, approximately one year after returning from military leave, Plaintiff was promoted to Lieutenant. He claims that had he been promoted in 2001, he would have returned to work at the DOC, where he would have earned more money than he did in the military.
 C The Promotional Process at DOC
Promotions at the DOC are governed by Rhode Island's Merit System law, Rhode Island General Laws § 36-4-1, et seq. The process begins with a written examination testing an *Page 4 
employee's knowledge of DOC policy and procedure. These test scores determine whether employees are reachable[2] to interview for Lieutenant openings when they become available.
Reachable candidates first have an interview with four DOC officials. That panel asks each candidate a series of questions that are developed by the panel to test each candidate's experience, judgment, enthusiasm, interest, and similar qualities. Each candidate interviews with the same panelists, and those panelists ask identical questions of each candidate. Panelists are not permitted to prompt candidates toward preferred answers. Once a candidate has reached the panel interview, his or her written exam score is not considered in subsequent parts of the promotional process.
After the panel interview, the panel gives the Director of the DOC its recommendations regarding which candidates should receive further consideration. The Associate Director of Human Resources and the Assistant Director of Administrations also provide their recommendations to the Director. The Director has final authority on which reachable candidates will receive a second interview and which candidates are ultimately promoted. Director A.T. Wall ("Wall" or "Director Wall") stated that "he make[s that decision] on the basis of the recommendations that come before" him from the panel, the Associate Director of Human Resources, and the Assistant Director of Administrations. (Tr. 579.)
 D Panarello's Interviews
In February 2001, Panarello was interviewed by a panel chaired by Warden Tom Partridge ("Partridge"). The other panel members were Deputy Warden David Caruso *Page 5 
("Caruso"), Deputy Warden Cindy Drake ("Drake"), and Inmate Grievances Chairperson Robert McCutcheon ("McCutcheon").[3]
Panarello wore his military dress uniform to the interview and, according to the Plaintiff, Caruso stated that Panarello's choice of dress was "not going to look good" to the panel. (Tr. 135.) Panarello reported Caruso's comment to George Truman ("Truman"), the DOC's Associate Director of Human Resources (Plaintiff's Ex. 3), but Truman does not recall ever conducting any investigation or speaking with Caruso about the comment. Of the twelve candidates interviewed for five openings by the panel in 2001, Panarello ranked eleventh and was not considered any further.
In February 2002, Panarello was again interviewed for a Lieutenant position. This panel was chaired by Warden Walter Whitman ("Whitman") and included Lieutenant Carol Getter ("Getter"), Deputy Warden Jim Vierra ("Vierra"), and Caruso. At this interview, Whitman told the Plaintiff that "if you're not available, you may not get the job." (Tr. 513.) Of the seven candidates interviewing for two openings by the panel, Panarello ranked fifth and was not further considered for promotion that year.
Many panelists admitted they lacked knowledge of laws or department policies regarding military service.[4] Truman admitted at trial that the DOC management staff was "clueless" regarding USERRA at the time of Panarello's interviews. (Tr. 28.) Truman acknowledged that he never supplied any of these managers with training or information to educate them about USERRA (Tr. 29) and that the DOC had no written policy regarding promotions for employees on military leave (Tr. 30). In June 2002, Plaintiff was offered a six-month temporary Lieutenant's position. This offer, however, was withdrawn when Panarello informed the DOC *Page 6 
that he would not be able to report for duty immediately. In the spring of 2006, Lieutenant Colonel Dennis Riel of the National Guard gave four hours of training to the DOC's "[w]ardens, management level [staff, and] administrative staff from human resources." (Tr. 305.) This training covered the protections granted to employees under USERRA.
Plaintiff returned full-time to the DOC as a correctional officer in September of 2006. In that same year, he took a make-up version of the 2003 civil service exam. In 2007, Panarello again interviewed for a promotion and was, indeed, promoted to Lieutenant. Though the Plaintiff claims that his credentials had not improved between 2002 and 2007, the DOC presented credible evidence that Plaintiff was a much-improved candidate in 2007. The 2007 interview panel was chaired by Caruso and included Sergio DeSousarosa, Silma-del Langley, Donna Collins, and Alfred Leach.
 II Standard of Review
Rule 52(a) of the Superior Court Rules of Civil Procedure provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon." Super. R. Civ. P. 52(a). In a non-jury trial, the trial justice sits as the trier of fact as well as of law. Parella v. Montalbano, 899 A.2d 1226, 1239 (R.I. 2006) (quoting Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984)). "Consequently, [the trial justice] weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences." Id. The factual determinations and credibility assessments of a trial justice "traditionally [are] accord[ed] a great deal of respect . . . [because it is] the judicial officer who actually observe[s] the human drama that is part and parcel of every trial and who has had the opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." In reAnderson, Zangari Bossian, 888 A.2d 973, 975 (R.I. 2006). *Page 7 
Our Supreme Court has recognized that "a trial justice's analysis of the evidence and findings in the bench trial context need not be exhaustive, and if the decision reasonably indicates that [she] exercised [her] independent judgment in passing on the weight of the testimony and the credibility of the witnesses it will not be disturbed on appeal unless it is clearly wrong or otherwise incorrect as a matter of law." Notarantonio v. Notarantonio,941 A.2d 138, 144-45 (R.I. 2008) (quoting McBurney v.Roszkowski, 875 A.2d 428, 436 (R.I. 2005)). "Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case."Hilley v. Lawrence, 972 A.2d 643, 651 (R.I. 2009) (quotingDonnelly v. Cowsill, 716 A.2d 742, 747 (R.I. 1998) (internal citation omitted)).
 III Analysis A Statutory and Burden-Shifting Framework
USERRA contains multiple sections each of which concentrates on different employment protections for military personnel. Section 30-11-3(b) of the Rhode Island General Laws adopts all the protections of USERRA for state law claims.
In its January 22, 2009 Decision, this Court followed the reasoning of Rogers v. City of San Antonio,392 F.3d 758 (5th Cir. 2004) that "the Plaintiff's claim to a promotion falls under § 4316, which specifically addresses employee rights while on military leave, rather than the general anti-discrimination provision contained in § 4311."Panarello v. State, 2009 WL 301888. A later-decided case, however, held that "the remedies provided by §§ 4311 and 4316 [were] not necessarily mutually exclusive, and factual distinctions between Rogers and [that] case require [the court] to examine whether [the Plaintiff] has a viable claim under § 4311." Crews v. City of Mt. Vernon,567 F.3d 860, 865 (7th Cir. 2009). *Page 8 
In the instant case, the Plaintiff has a claim distinguishable from the claim of the Rogers plaintiffs. Whereas, theRogers plaintiffs were seeking civilian employment benefits while on military leave, Panarello was seeking a promotion through the DOC's normal interview process. While the Rogers
plaintiffs were seeking a civilian employment benefit not available to employees on non-military leave, Panarello was seeking a promotion — something that all employees that score well enough on the civil service exam are entitled to seek regardless of leave status.
Panarello's claim for promotion involves two distinct rights. First, he claims he should have the same access to the promotional process as any other DOC employee on leave. Second, he claims that his military service and attendant unavailability should not have been held against him once he had begun the process. Thus, § 4311 and § 4316 are both applicable to this case: Section 4316 protects the Plaintiff's right to have the same opportunity as any other DOC employee on leave to apply for openings, and § 4311 protects his right to be free from discrimination during that promotional process. In other words, § 4316 gets the Plaintiff in the door for the interview, and § 4311 governs the process of the interview and promotion process itself. This Court finds that the DOC has met its obligation to Panarello under § 4316 by giving him the same opportunity to take the civil service exam, be interviewed, and be considered for promotion for Lieutenant. He received no less opportunity to do so than any other DOC employee on leave. The crux of this case, therefore, is whether the DOC violated § 4311's antidiscrimination protections during the promotional process.
The State argued that USERRA protections do not apply to the Plaintiff because he was away from the DOC for longer than the five-year limitation set forth in § 4312(a)(2) of USERRA. Section 4312, however deals with the rights of military personnel to return to their *Page 9 
civilian jobs — a subject that is not at issue in the present case because Panarello does not allege he was prevented from returning to the DOC after his tour of active duty. The time limitations articulated in § 4312 are not applicable to this case because the qualifications of each section of USERRA do not apply to other sections. Courts have held that the limitations of § 4311 do not apply to § 4312 because USERRA's legislative history and "statutory language scheme demonstrate[] two separate and distinct statutory protections." Wrigglesworth v.Brumbaugh, 121 F. Supp.2d 1126, 1134 (W.D. Mich. 2000);see also Jordan v. Air Products and Chemicals,225 F. Supp.2d 1206 (C.D. Cal. 2002) (adopting theWrigglesworth Court's determination that § 4311 and 4312 are independent of each other); Veteran'sEmployment and Training Services, 70 Fed Reg. 75251 (December 19, 2005) (codified at 20 C.F.R. pt. 1002) ("[A] person seeking relief under section 4312 need not meet the additional burden of proof requirements for discrimination cases brought under section 4311."). This Court finds that because § 4311 and § 4312 are distinct from each other, the time limitations placed upon § 4312 claims do not apply to Panarello's claims under § 4311 and § 4316. Section 4312 does not prevent the Plaintiff from bringing a claim under § 4311 and § 4316 regardless of the amount of time that he spent on military leave. Consequently, the parties' disagreement about the amount of time that the Plaintiff spent on military leave is moot and need not be resolved in deciding this case.
In its January 22, 2009 Decision, this Court determined that it would apply the two-prong burden shifting analysis as articulated inVelasquez-Garcia v. Horizon Lines of Puerto Rico,473 F.3d 11 (1st Cir. 2007) for both state and federal law claims. See Panarello v. State,2009 WL 301888. This two-prong burden-shifting analysis used for USERRA cases requires a plaintiff to make "an initial showing that military status was a `motivating or substantial factor' in the employer's action." Id. (quotingValasquez-Garcia at 17). If the plaintiff meets this initial *Page 10 
burden, "the burden of proof shifts to the employer to prove that the action would be taken despite the military status."Id.
Under § 4311's anti-discrimination protections, neither an employee's military experience nor the unavailability related tothat military service can be used as a factor in negative employment action. McLain v. City of Somerville,424 F. Supp.2d 329 (D. Mass. 2006). The McLain Court held that an employer's attempt to distinguish discrimination based onmilitary status from discrimination based on unavailabilitybecause of military obligations "ignores the plain language of § 4311(a), which prohibits discrimination based not only on a person's status as a member of the uniformed services, but also on the service member's `obligation to perform service.'"Id. at 334-335 (quoting 38 U.S.C. § 4311). Thus, in the instant case, the DOC cannot defeat Panarello's claim by stating that only his unavailability and not the military status itself was a factor in not promoting him. Similarly, the DOC decision makers' general attitudes toward the military itself — whether positive or negative — are not proof that they did, or did not, improperly consider Panarello's military service unavailability.
 B Motivating or Substantial Factor 1 Plaintiff Failed to Meet His Burden
Based on the testimony at trial, this Court finds that the Plaintiff failed to meet his burden under theVelasquez-Garcia framework; that is, Panarello did not prove that military service and the accompanying unavailability was a "motivating or substantial factor" in the DOC's decisions not to promote him in 2001 and 2002. The evidence at trial did show that at the time of Panarello's 2001 and 2002 promotional processes, DOC officials were uneducated about the protections of USERRA. Panarello, however, failed to show that this lack of knowledge of USERRA resulted in negative employment action because of his military unavailability. *Page 11 
Panarello, rather, provided a series of gray facts that did not reach the level of "motivating or substantial factor" in consideration of his promotion to Lieutenant.Velasquez-Garcia at 17. Rather, Panarello was not promoted in 2001 and 2002 because he was less-qualified on the merits than the candidates promoted to Lieutenant in those years. His 2001 and 2002 interviewers credibly testified that, based upon the several objective criteria used by the panels, he did not perform as well as those promoted. By the time he was promoted in 2007, Panarello had taken several significant steps to improve his candidacy — including earning a college degree and gaining much better understanding of DOC policies.
 2 Alleged Comments of DOC Officials
Panarello contends that statements by DOC officials suggest that his unavailability was a motivating factor in the promotional process. This Court disagrees. The Court keeps in mind "that when the feelings and pride of people are directly in issue, the natural human tendency is to remember the facts in a slightly exaggerated fashion in order to preserve one's sense of dignity." Brook v.City of Montgomery, Ala.,916 F. Supp. 1193, 1203 (M.D. Ala. 1996).
The plaintiff testified that, during a chance encounter at the Providence Place Mall, Director Wall told the Plaintiff that he would not be promoted while on military leave. After considering the testimony of both Plaintiff and Wall, it is the Court's conclusion that Plaintiff's version of events does not ring true. The Court found Wall to be a credible witness and believes his testimony that he "wouldn't telegraph to somebody the outcome of a process, especially if the process wasn't even underway and [he] didn't know what would happen in the process." (Tr. 595.)
To support his claim that Director Wall did tell him that he would not be promoted, Panarello testified he called union official Richard Ferruccio following his encounter with *Page 12 
Director Wall to report the incident. (Tr. 133.) The Plaintiff, however, offered no corroborating evidence of making such a phone call. See Blakeney v. United Subdivisions, Inc.,97 R.I. 34, 195 A.2d 234, 237 (1963) (the "probative force [of testimony] was vitiated by the absence of corroboration on the part of [another party] present during the conversation").
This Court does not find that Caruso's comment regarding Panarello's clothing before the 2001 interview is demonstrative of bias against Panarello's unavailability because of military obligations. The DOC has provided sufficient evidence that Panarello was not the best candidate for the promotion in 2001 and 2002. Therefore, Panarello's clothing did not have to come into consideration at all in the Department's decision to promote candidates other than Panarello to Lieutenant in 2001 and 2002.
Panelist Whitman's comments regarding Panarello's availability and its effect on his promotion were certainly ill-advised and, in actuality, incorrect. Though improper, these comments do not rise to the level of proving discrimination on the part of the DOC.See Velasquez-Garcia at 19 (stating that "remarks that [were] clearly anti-military [were not] necessarily proof of anti-military discriminatory animus. . . . A jury could find, for example, that the remarks were not malicious."). In response to Panarello's question regarding his unavailability's effect on the promotional process, Whitman stated that unavailability may have a negative impact on prospects for promotion and made comments that Plaintiff should make a choice between his civilian and military careers.
Whitman's comments and opinions were improper and inaccurate in light of the protections of USERRA, but do not rise to the level needed to prove discrimination by the DOC because they were not blatantly discriminatory. See Brook at 1205 (holding that a statement that an older employee should not be promoted because the promotion would increase his retirement *Page 13 
earning potential was not blatant discrimination). The Court notes there was no testimony or evidence that Whitman penalized Panarello for his unavailability when grading his interview responses. In fact, Whitman's score for Panarello was about average for the scores he gave to the seven applicants he interviewed. (Def. Ex. D9.) There was also no testimony or evidence that Whitman's opinions were taken into account by the Assistant Director for Human Resources, the Assistant Director for Institutions and Operations, or Director Wall, who made the subsequent and final decisions regarding promotions. See id. (holding that a litigant must link a non-blatant comment to negative employment action to prove discrimination). Thus, Whitman's inappropriate comments were not sufficiently proven to be connected to negative employment action to be considered a "substantial or motivating factor" in the DOC's decision not to promote Panarello in 2002.
 3 Reasons For Promotions
The Court is also unconvinced by the Plaintiff's argument that he was an equally good or better candidate for promotion in 2001 and 2002 than in 2007. Plaintiff contended that this promotion after his return from military leave proved that the only reason he was not promoted earlier was his military leave. The DOC, however, presented very credible testimony that the candidates eventually promoted to Lieutenant in 2001 and 2002 were more qualified on the merits than the Plaintiff and that the Plaintiff was a much-improved candidate in 2007.
Several panelists testified about the qualities that they sought to glean from the candidate's answers to their uniform questions. For example, 2002 interview panelist Getter "wanted someone that was self-confident, knowledgeable of the policies and procedures of the department, that would represent the department in a beneficial light, [and] who showed an interest in bettering the department." (Tr. 419.) Whitman testified that "probably the most *Page 14 
important thing we can ascertain at an interview is the knowledge of the inner workings of the department, the policies and procedures that we are guided by every day when we're on duty." (Tr. 492.) Similarly, 2001 panelist McCutcheon looks "to see if the person . . . presents himself as an ambassador to the department, one that could ensure that people under his direction or her direction will follow policies and procedures." (Tr. 537.) Finally, 2001 panelist Drake believes that "a Lieutenant really needs to know policy, procedures, really needs to be grounded in security of the building, as well as knowledge of rehabilitation." (Tr. 739.)
A common theme throughout these criteria is an emphasis on knowledge of the role of a Lieutenant and understanding of DOC policies and procedures. Significantly, this knowledge and understanding were qualities that Panarello's interviewers found him to lack in both 2001 and 2002. The panelists' comments on Panarello's responses to the questions — designed by the DOC to test, among other things, knowledge of policy and procedure — are illustrative of why Panarello was not a top candidate.
Partridge noted that for one question Panarello gave a "shaky answer [and was] unsure where to proceed" and on another question was "weak — not sure of answer. [V]ery broad." (Def.'s Ex. B213). In 2001, Caruso wrote that one answer demonstrated Panarello "lacked knowledge in minimum standards" and another answer was "off base" and "missed the most important points." (Def.'s Ex. B215). In 2002, Caruso found Panarello to be "shallow in what he thinks a lieutenant should do." (Def.'s Ex. D83). At trial, Drake testified that Panarello gave short answers and "didn't give a lot of detail" or "give examples of how that would apply to being a lieutenant or running a facility." (Tr. 741.) Getter testified that Panarello "had little strength in the knowledge of current policies and procedures" even though "he could have *Page 15 
afforded himself the opportunity to review the policies and procedures before the interview. (Tr. 461.) Whitman testified that Panarello's "knowledge [of DOC policies] was average." (Tr. 496.) Candidates who were recommended to advance in the process had interviews that reflected their knowledge of DOC policies and understanding of the role of a lieutenant. (See generally, Def.'s Ex. B).
Though none of the interviewers found Panarello to betotally unqualified, he simply did not perform as well as some other candidates in the uniform interview process. Thus, Plaintiff has failed to show by a preponderance of the evidence that he was a superior candidate to those chosen for promotion in 2001 and 2002. That failure is sufficient reason to choose not to promote a candidate. Military service would not have to play a "substantial or motivating factor" for the panels to make the decisions made in 2001 and 2002. See, e.g., Vega-Colon v. WyethPharmaceuticals,2010 WL 4260903 at *4 (1st Cir. 2010) (Plaintiff not chosen for a promotion failed to prove discriminatory purposes because, although he "had some knowledge about the position's requirements, he did not know who else applied for the position, those persons' qualifications, or why [the employer] recruited" another applicant.).
There was also credible testimony and evidence from the DOC that Panarello was a much-improved candidate in 2007. Each of Panarello's 2007 panelists noted with approval that he had reviewed 30 DOC policies and spoken with several Captains and Lieutenants in preparation for the interview. (Def.'s Ex. E52, E54, E56, E58). Additionally, he was better educated in 2007 than he had been in 2001 and 2002, having earned a Bachelor's Degree in Criminal Justice in 2007 and a Certificate from the Air Force Senior NCO Academy in 2003 (Def.'s Ex. E61). At trial, Caruso — the only panelist to interview Panarello in each of his attempts at promotion — testified that Panarello seemed better prepared for the 2007 interview, *Page 16 
stating that Panarello "was more versed, and he hit most of [the policies] and he hit them in depth." (Tr. 718.) Thus, Panarello has failed to show that his 2007 interview performance was equal to or worse than his interview performances in 2001 and 2002. This Court is therefore not persuaded that his 2007 promotion serves as any proof that the DOC improperly used bias in denying him promotion in 2001 and 2002.
 4 3-Day-Rule Promotion
Plaintiff argues further that the DOC improperly considered his military unavailability when it withdrew the offer of a 3-Day-Rule Position in 2002. This Court disagrees. The DOC presented credible evidence that 3-Day-Rule positions require immediate availability as a basic requirement. Unlike the permanent lieutenant positions, 3-Day-Rule positions are created to fill an immediate need that arises when a vacancy occurs.[5] The purpose of these positions would be undermined if the DOC were to fill these temporary positions with employees that would themselves need temporary replacement. The Court is, therefore, convinced that immediate availability is a legitimate requirement for the temporary promotions created by the 3-Day-Rule.
Furthermore, Panarello produced no evidence that 3-Day-Rule positions were ever given to people on any type of leave. Thus, the DOC's decision not to give Panarello a 3-Day-Rule position is not reflective of bias against his military service or subsequent unavailability. The Court wishes to make clear that a requirement of immediate availability is permissible in light of USERRA only in the specific case of the temporary 3-Day-Rule positions. Requirements of immediate availability are not acceptable in the context of permanent positions. *Page 17 
 5 Other Allegedly Retaliatory Actions
Panarello further contends that the DOC took several negative actions to retaliate against him for pursuing his rights under USERRA in violation of § 4311's prohibition against taking "adverse employment action against any person because such person . . . has exercised a right provided for in" USERRA. 38 U.S.C. § 4311(b). The Court finds that none of these actions was retaliatory in nature.
Specifically, Plaintiff maintains that the DOC took away his Blue Cross medical coverage in retaliation for his complaints of discrimination. However, at trial, Panarello acknowledged that he knew that he was not the only person affected by this particular problem with insurance coverage and stated that the problem was corrected and his expenses reimbursed. (Tr. 218-219.) Plaintiff presented no evidence to suggest that this was anything but an honest mistake that was eventually corrected.
Plaintiff also maintains that, in a letter regarding a disagreement about the Plaintiff's return to the DOC from active duty, Truman threatened to take the Plaintiff's job away. This Court believes that Truman's December 15, 2005 correspondence regarding Plaintiff's date of return (Pl.'s Ex. 8) was neither retaliatory nor a threat of taking Panarello's job away. Rather, Truman's correspondence was an ordinary communication of Truman's official opinion regarding the date after which Panarello would not be protected by USERRA § 4312 protections requiring employers to reinstate employees. Furthermore, the December 15, 2005 letter was written in response to Panarello's September 11, 2005 letter in which Panarello expressed a desire to "settle any differences of information prior to [his] return." (Pl.'s Ex. 7.) Truman's letter was a reasonable response to Panarello's letter. Because this dispute concerns only § 4311 and § 4316, this Court need not determine whether the DOC's assessment of Panarello's § 4312 *Page 18 
rights was correct. Regardless of whether Truman's opinion regarding USERRA protections for Panarello's return was correct, the Plaintiff has failed to show that Truman's assessment of Panarello's return date was a negative employment action in response to Panarello's pursuit of USERRA protections.
Finally, the DOC's decision not to permit Panarello to work at the DOC while on active duty was based on neutral rules in place at the time the incidents underlying this litigation arose and thus cannot be characterized as retaliation. In Truman's October 21, 2002 letter to Panarello, Truman explains that because of the collective bargaining contract and personnel rules under the Merit System law, Plaintiff could not "voluntarily or randomly place [himself] on the roll call at [the DOC] [] on the same day [he was] paid for [his] service with the military." (Pl.'s Ex. 10, page 1). Panarello, therefore, was informed of a legitimate, nondiscriminatory reason for the DOC's decision before the instant action was filed. Furthermore, Panarello presented no evidence that any other person had ever worked at the DOC while on active duty in the military.
 IV Conclusion
Although the Court finds that DOC officials lacked ill intentions, it recognizes that the promotional process as it existed in 2001 and 2002 was far from ideal. The evidence demonstrates that the highest-ranking officers at the DOC, which employed at least 100 military personnel, were admittedly "clueless" about the protections afforded by USERRA. Thus, the panel members and other high-ranked officials, lacking proper training, used practical but improper criteria in considering whom to promote. The DOC did eventually get training on USERRA protections in the spring of 2006 — twelve years after USERRA's enactment.
Nonetheless, Panarello has not proven that the DOC discriminated against him in violation of USERRA when he was not promoted to Lieutenant in 2001 and 2002. He has also *Page 19 
not shown that the DOC discriminated against him by revoking an offer of a temporary 3-Day-Rule Lieutenant's position in 2002. Nor has Panarello proven that the DOC took any retaliatory action once he began to pursue his rights under USERRA. Counsel shall prepare an appropriate judgment for entry in accordance with the rulings of this decision.
[1] Following trial, Plaintiff settled his dispute with Defendants Employees' Retirement System of Rhode Island by and through its Executive Director, Frank J. Karpinski. Accordingly, this Court dismissed with prejudice the claims against these two Defendants on November 9, 2009. The only remaining Defendant in this case is the State of Rhode Island, Department of Corrections.
[2] The Rhode Island Department of Administration creates a rank-ordered list of successful test-takers. When hiring for a position, the DOC interviews the top six finishers. The number of interviewees increases as the number of available positions increases. For example, the top six finishers interview for one opening, the top seven interview for two openings, etc. A candidate is considered "reachable" if he or she is in that group of people that can be interviewed.
[3] All references to ranks of panelists reflect that panelist's rank at the time of the interview, not his or her present rank.
[4] Panelists testifying to lack of knowledge regarding USERRA included: Walter Whitman (Tr. 510), Carol Getter (Tr. 436), and David Caruso (Tr. 720).
[5] According to George Truman, "when there's a known vacancy for an extended period of time and an agency desires to fill that position while that person is away, it can be done by taking someone of lower rank and placing [him or her] into that position" under the 3-Day-Rule. The 3-Day-Rule is also known as the 11-Day-Rule. (Tr. 75-76.)